State *v.* Haven.

STATE *v.* JOEL M. HAVEN.

*Criminal Law.     Pleading.*

1. PLEADING—ARGUMENTATIVENESS. A count in an indictment, under the statute,—R. L. s. 4160,—is bad for argumentativeness in which it is alleged that the respondent, as treasurer of a railroad company, did sign, with intent that the same should be issued and used, a certain false certificate of the ownership of 1000 shares of its capital stock, falsely certifying that one Mead was then and there owner of 1000 shares, which he did not own nor have standing in his name, and was not entitled to *any* share.

2. DUPLICITY. A count is bad for duplicity, in which it is alleged that the respondent signed a certain false certificate of stock with the intent that it be issued and used, and that he caused it to be issued and used; as two offenses are charged.

3. REPUGNANCY. An indictment is bad for repugnancy, in which it is alleged that the respondent caused to be issued to M a false and fraudulent certificate of the ownership of 1000 shares of stock; that it was then and there signed in blank, and was and is of the following tenor, setting it out; as a blank certificate cannot certify nor purport ownership nor have a tenor.

INDICTMENT charging the respondent with signing and issuing a false and fraudulent certificate of the capital stock of the Rutland Railroad Company. Heard on demurrer to the indictment, September Term, 1884, Ross, J., presiding. Demurrer *pro forma* overruled, and indictment adjudged sufficient.

· The first count alleged that the respondent was the treasurer of said railroad company, which was a corporation duly incorporated, " and having a capital stock and the right and authority to issue certificates of the ownership of the shares of its said capital stock to the several· owners and holders thereof, which said capital stock was divided into shares of one hundred dollars each. And the said Joel M. Haven then and there being such officer, to wit, treasurer of the said Rutland Railroad Company, as aforesaid, did, with force, etc., willfully, designedly and feloniously, as such officer, to wit, treasurer of said Rutland Railroad Company, sign with the intent that the same should be issued and used a certain false and fraudulent certificate of the ownership of 1000 shares of the said capital stock of the aforesaid Rutland Railroad Company, falsely certifying and purporting that Dr. J. A. Mead was then and there the owner of 1000 shares of the said capital stock of said Rutland Railroad Company, which said false and fraudulent certificate was and is of the following tenor, that is to say : [Setting out the certificate.]

" When in fact the said Dr. J. A. Mead did not own or have standing in his name any share or shares of the said capital stock of said Railroad Company, nor was he, the said Dr. J. A. Mead, entitled to any share or shares of the said capital stock of said Rutland Railroad Company which was then and there well known to the said Joel M. Haven, treasurer as aforesaid, which said false and fraudulent certificate, purporting to be a certificate of the said capital stock of the said Rutland Railroad Company owned by the said Dr. J. A. Mead, he, the said Joel M. Haven, then and there being such officer, to wit, treasurer of said Rutland Railroad Company, as aforesaid, had no authority to make or issue, contrary to the form," etc.

Second count, in part :

" Said Haven  *  *  *  did  *  *  *  sign with his proper hand, J. M. Haven, with the intent that the same should be issued and used, a certain false and fraudulent certificate of the ownership of 1000 shares of the said capital stock of· the aforesaid company, falsely certifying and purporting that Dr. J. A. Mead was then and there the owner of 1000 shares of· the said capital stock of said company, which said false and fraudulent certificate had been signed in blank by

State *v.* Haven.

John B. Page as president of said company, he, the said John B. Page, then and there being the president," etc.

" Which said false and fraudulent certificate had the seal of the said company affixed thereto, and was then and there by the said Joel M. Haven delivered to the said Dr. J. A. Mead, to wit, at Rutland aforesaid, when in fact the said Dr. J. A. Mead did not own or have standing in his name any of the said shares of the said capital stock of the said company, in said false and fraudulent certificate mentioned, nor was he, the said Dr. J. A. Mead, entitled to any of the said 1000 shares of the said capital stock of said company, mentioned in said false and fraudulent certificate."

Third count, in part :

" Said Haven    *    *    *    did    *    *    *    cause to be issued to Dr. J. A. Mead, a certain false and fraudulent certificate of the ownership of 1000 shares of the said capital stock of the aforesaid company, the said certificate falsely certifying and purporting that the said Dr. J. A. Mead was then and there the owner of 1000 shares of the said capital stock of said company, which said false and fraudulent certificate of the ownership of the said 1000 shares of capital stock of said company was then and there signed in blank by John B. Page as president of said company, he, the said John B. Page then and there being the president of said company, and by the said Joel M. Haven, with his proper hand, J. M. Haven, as treasurer of said company, they, the said John B. Page as such president, and the said Joel M. Haven as such treasurer, being duly employed, authorized and empowered by said company to sign its said valid and lawful certificates of the ownership of its said capital stock, which said false and fraudulent certificate was and is of the following tenor, that is to say :

" ' No. 2266. State of Vermont.
" ' The Rutland Railroad Company.

" ' This is to certify that Dr. J. A. Mead is entitled to one thousand shares of the capital stock of the Rutland Railroad Company, transferable only on the books of the company by him or his attorney upon the surrender of this certificate.

" ' In testimony whereof, the said company have caused this certificate to be signed by their president and treasurer.

" ' Rutland, February 14, 1883.
" ' 1000 shares.    Signed,                          Signed,
" ' J. M. Haven, Treas'r,    John B. Page, Pres't.'

" When in fact the said Dr. J. A. Mead did not own or have standing in his name in any of the said shares of the aforesaid capital stock of the said company, in said false and fraudulent certificate mentioned, nor was he, the said Dr. J. A. Mead, entitled to any share or shares of the said capital stock of said company, in the said false and fraudulent certificate mentioned, which was then and there well known to the said Joel M. Haven."

It was alleged in the fourth count that said Haven did " cause t) be used a certain false and fraudulent certificate," etc. ; and in the sixth count that the certificate was " then and there signed, issued and delivered to the said Dr. J. A. Mead by the said Joel M. Haven as aforesaid."

*E. R. Hard*, for the respondent.

This count is bad for repugnancy, it being alleged that the certificate purported that Mead was the owner of certain shares, while the certificate set forth in the count states that he was entitled to the shares. 1 Bish. Cr. Pro. ss. 489, 490 ; Gould Pl. pp. 154–5 ; 1 Chit. Pl. (16th Am. ed.) 255.

It is not alleged with sufficient or any certainty, for what purpose the certificate was signed, nor that it was signed with any *unlawful* or *improper intent*, nor with intent that it should be issued or used *unlawfully* or *improperly*.

The general words, " wilfully, designedly and feloniously " signify nothing as a description of the offense. 1 Bish. Cr. Pro. ss. 612, 619, 623 ; *State* v. *Comfort*, 22 Minn. 271 ; *State* v. *Shenton*, *id.* 311 ; *State* v. *Simmons*, 73 N. C. 269 ; *Harrington* v. *State*, 54 Miss. 490 ; *Covington* v. *State*, 6 Tex. App. 512 ; *Long* v. *State*, *id.* 642 ; *Dillingham* v. *State*, 5 Ohio St. 280, 283 ; *U. S.* v. *Goggin*, 9 Biss. 269 ; *State* v. *Keach*, 40 Vt. 113 ; *State* v. *Jones*, 33 Vt. 443.

As to using the particle *or* in pleading, see *King* v. *North*, 6 Dow. & Ryl. 143 ; *Commonwealth* v. *Grey*, 2 Gray, 501 ; *State* v. *Gray*, 36 N. H. 359.

The allegation that he did not own, etc., " *any* share or shares," etc., is denying his ownership, etc., only argumenta-

tively, and is therefore insufficient. 1 Chit. Pl. (16 Am. ed.) 260 ; Gould Pl. 63, 64 ; *Bourne* v. *Taylor*, 10 East, 189.

To warrant a conviction under the statute, it is necessary to allege as well as to prove, that *Haven knew*, or supposed *when he signed the certificate, that it was false and unlawful*. R. L. s. 4160 ; 1 Bish. Cr. Law, s. 285.

The second count is bad for duplicity. 1 Chit. Pl. 246 and note, 558 note *c*.; Gould Pl. 219, 420 ; 1 Bish. Cr. Pro. ss. 432, 433 ; *State* v. *Nelson*, 8 N. H. 163 ; *People* v. *Cooper*, 53 Cal. 647 ; *Hunt* v. *New Haven*, 52 N. H. 162, 168.

Third count : In this count the allegation in substance is, that the instrument which Haven caused the issue of was signed both by him and by the president *in blank;* consequently it was not a certificate when, as alleged, Haven caused it to be issued.

The fifth count is like the first and bad. Gould Pl. 151 ; 1 Chit. Pl. 248, note ; *Watriss* v. *Pierce*, 36 H. H. 232, 239, 240 ; *Ralston* v. *Strong*, 1 D. Chip. 287, 293 ; *Church* v. *Gilman*, 15 Wend. 656 ; *Fidler* v. *Delavan*, 2 *id*. 57, 59, 60.

The sixth count is bad for repugnancy.

*F. S. Platt* and *P. R. Kendall*, for the State.

A share or shares of stock in a corporation are not distinguishable or separable. It is, therefore, not erroneous, to allege in the indictment that Dr. Mead did not own or have standing in his name any share or shares of the said capital stock. The averment is in substance that Dr. Mead had no stock, and that the respondent, knowing it, wilfully and designedly signed, etc., the certificate. This would make it a false certificate.

The second and sixth counts are not double.

The signing with intent that it shall be issued or used, and the causing to be issued and used, a false certificate of shares of stock, are one and the same offense, and may well be alleged conjunctively, *State* y. *Morton*, 27 Vt. 310 ; Bishop Cr.

Proc. s. 190 ; State v. Mathews, 42 Vt. 542 ; State v. Brady, 14 Vt. 353 ; Bryan v. State, 12 Wis. 519 ; State v. Nelson, 29 Me. 329 ; Commonwealth v. Twitchell, 4 Cush. 74 ; Henkle v. Commonwealth, 4 Dana, 518 ; Bishop Forms, 19 ; 15 Pick. 275.

It is not uncommon under statutes making the forging and uttering of forged paper punishable by the same penalty, to allege in the same count both the forging and uttering. Bishop Forms ; Desty Cr. Law, s. 150.

It is submitted that the well-established rule, in cases of this character, where the expression is of intent to defraud in any way, as to issue, to utter, and applies to money or paper of the character set forth in the indictment, is that the allegation be made in precisely the form that is used in this indictment. State v. Wilkins, 17 Vt. 151 ; Bishop Cr. Proc. 223 ; 2 Arch. Cr. Proc. p. 1681.

This is not a common law crime but a statutory one. The general rule, recognized both in England and this country, requires no more than that the indictment charge the offense in the words by which the statute creates and describes it. State v. Cook, 38 Vt. 437 ; also HARLAN, J., U. S. v. Simmons, 96 U. S. 360. To the same effect are : State v. Daley, 41 Vt. 564 ; State v. Jones, 33 Vt. 443 ; Tully v. Commonwealth, 4 Met. 357 ; 3 Met. 464.

This of course is not the rule in indictments upon statutes describing an offense by its common law name.

As to using the particle or, see Bish. Stat. Cr. s. 1043 ; State v. R. R. Co. 28 Vt. 583.

The opinion of the court was delivered by

ROWELL, J. The first and the fifth counts are bad for argumentativeness. They allege that Mead did not own nor have standing in his name and was not entitled to any share or shares of the capital stock of said company, which is but an argumentative way of saying that he did not own and was not entitled to the shares of stock purporting to be conveyed to

him by said certificate.   Thus, in trespass for breaking and entering the plaintiff's close, and subverting the soil thereof, and digging and boring the same, the defendant pleaded scisin in fee in the Duke of Northumberland of the manor of Tyne-mouth, of which the closes in question had immemorially been parcel and copyhold tenements, and that by reason thereof the Duke was seised in fee of all the veins and seams of coal lying within and under the copyhold tenements of said manor, to-gether with the liberty of boring for, digging for, and getting such veins and seams of coal there, and of doing all things necessary for that purpose.   The plaintiff replied that as well the said veins and seams of coal as the rest of the soil and ground within and under said closes had from time immemorial been parcel of said manor, and demised and demiseable by copy of court-roll, without any exception or reservation of the mines or seams of coal within and under said closes, etc. ; to which the defendant demurred, for that the replications did not di-rectly traverse nor confess and avoid any of the matters alleged in the pleas, but were argumentative and not issuable ; and the court, construing the pleas to claim a liberty during the con-tinuance of the copyhold estate, said that it required no argu-ment to show that a replication that the copyholds had always been demised without any exception or reservation of the mines or seams of coal, was not a confession of the liberty and an avoidance of it, but was a mere argumentative denial of its ex-istence, and that the replications were bad on that ground. *Bourne* v. *Taylor*, 10 East, 189.

So, too, if in trespass for carrying away goods, the defend-ant should plead that the plaintiff never had any goods, that would be argumentatively saying not guilty, and so no plea, although the argument would be infallible.   Dyer, 43a ; Steph. Pl. 385.

The second and the sixth counts are bad for duplicity.   Un-der the statute, the act of signing a false certificate with intent that it shall be issued and used is of itself an offense, and caus-ing it to be issued and used is another and distinct offense.

Nor can they both be committed by the same act, but only by separate and distinct acts, though they may be committed on the same occasion.

When a crime may be committed in different ways, in contemplation of law the ways are the same act, and so a count charging its commission in all the ways is not double. *State* v. *Morton*, 27 Vt. 30, and *State* v. *Mathews*, 42 Vt. 542, are cases of this character. See *People* v. *Davis*, 56 N. Y. 95.

In *Commonwealth* v. *Eaton*, 15 Pick. 273, the prisoner was charged in one count with both offering for sale and selling half of a lottery ticket; and the count was held to charge but one offense, on the ground that a sale includes an offer to sell, the same as a battery includes an assault. And in *Commonwealth* v. *Twitchell*, 4 Cush. 74, a count charging both the setting up and the promotion of a certain prohibited exhibition was held good on the same ground.

Indeed no matters, however multifarious, will operate to make a count double if they constitute but one connected charge or transaction, provided that in no view can they be regarded as more than one offense. But if they can be so regarded, the count will be double. 1 Bishop Crim. Proceed. s. 193.

Applying these principles, these counts are clearly double.

The third and fourth counts each allege that the respondent as treasurer caused to be issued to Mead a false and fraudulent certificate of the ownership of one thousand shares of the capital stock of the company, the said certificate falsely certifying and purporting that said Mead was then and there the owner of one thousand shares of said capital stock. They then go on to allege that said certificate was *then and there* signed *in blank* by Page as president and by the respondent as treasurer, and that it was—without saying when—and is of the following tenor, setting it out.

Now a blank certificate cannot certify nor purport ownership nor have a tenor, as alleged, and so the allegations are inconsistent and repugnant; and as the allegation of signing is ma-

State *v.* Haven.

terial and cannot be rejected as surplusage, as then it would not appear that the certificate was signed at all when issued, the counts are bad.

Thus, an indictment charging the respondent with having forged an instrument whereby one person is bound to another, is bad for repugnancy ; for a forged instrument can bind nobody.

So in trespass, declaring for taking and carrying away timber lying in a certain place for the completion of a house " then lately " built, is bad ; for the timber could not be for a house already built.   *Nevil* v. *Soper*, 1 Salk. 213.

So a count in assumpsit, declaring on a promise to pay a sum certain if the plaintiff would provide another with necessaries, and also on a promise to pay as much as the plaintiff reasonably deserved to have on the same account, is both double and repugnant.   1 Chit. Pl. 231.

Exceptions sustained, indictment adjudged insufficient and quashed, and respondent discharged.