THE STATE v. BUCK, *Appellant.*

Division Two, February 27, 1894.

1. **Criminal Practice**: CHANGE OF VENUE.   An order of court granting a change of venue to the circuit court of another county is essential to give the latter court jurisdiction; the mere stipulation of the parties is insufficient.

2. ———: ———.   The record in this case *held* to show that the order granting the change of venue was properly made.

3. **Criminal Law**: INSOLVENT BANK: RECEIVING DEPOSITS.   The owner of a private bank is liable under Revised Statutes, 1879, section 1350, as amended by the act of 1887 (Laws, p. 162), for receiving deposits, knowing the bank to be insolvent, though he was doing an authorized business, because of his not having complied with the statutory requirements in relation to the organization of his bank. (*State v. Buck*, 108 Mo. 622, *affirmed.*)

4. ———: ———: PRIMA FACIE EVIDENCE: CONSTITUTION.   Section 3581, Revised Statutes, 1889, making it a criminal offense for an officer of a bank to receive a deposit knowing the bank to be insolvent and providing that the subsequent failure of the bank shall be *prima facie* evidence of such knowledge, is not violative of article 2, section 28, of the constitution which provides "the right of trial by jury, as heretofore enjoyed, shall remain inviolate."

5. **Criminal Practice**: FELONIES: DIFFERENT TRIALS.   One under conviction of, and sentenced for, a felony can not be tried for another felony in the same court until he has served his sentence or the judgment has been set aside or reversed.

*Appeal from Harrison Circuit Court.*—HON. C. H. S. GOODMAN, Judge.

REVERSED AND REMANDED.

*L. H. Waters* for appellant.

(1) The circuit court of Harrison county had no jurisdiction of the cause. *State v. Buck*, 108 Mo. 623. (2) The indictment charges no crime. It is idle to speak of the insolvency of a thing which can neither contract debt, purchase, hold or convey property, sue or be sued. (3) The court erred in giving instruction number 3, to the effect that the failure of the banking institution in this case is *prima facie* evidence of the knowledge on the part of the owner or manager that the same was in failing circumstances on November 8, 1887. Said instruction violates the constitutional guaranty "that the right to trial by jury, as heretofore enjoyed, shall remain inviolate." Cooley on Const. Lim., p. 309; *Cummings v. State*, 4 Wall. 328; *Wynehamer v. People*, 13 N. Y. 446; *San Mateo v. Railroad*, 116 U. S. 138; *State v. Beswick*, 13 R. I. 211; *State v. Divine*, 4 S. E. Rep. (N. C.) 477; *Clark v. Mitchell*, 64 Mo. 580.

*J. C. Wilson* and *Casteel & Haynes* also for appellant.

(1) The circuit court of Harrison county had no jurisdiction of the cause. *First.* While the transcript from DeKalb county recites that the indictment number 1 in this case was returned, and gives a copy of it, no further reference to, or mention of, case in indictment number 1 is made therein, but the transcript is made in number 4. *Second.* The transcript was not sufficient to confer jurisdiction. *Third.* The transcript was not certified as required by law. R. S. 1889, sec. 4166. *Fourth.* By the term "proceedings" is meant the orders in a cause. *Smith v. Jeffries*, 25 Ind. 376. *Fifth.* The court had no jurisdiction unless the trans-

cript conferred it. *Snitzer v. Downing*, 80 Mo. 588; *Bray v. Marshall*, 66 Mo. 122; *Henderson v. Henderson*, 55 Mo. 534; *State v. Buck*, 108 Mo. 629. (2) No crime is charged in the indictment. *First.* "Incorporated banks" and "private bankers" are alone authorized to carry on a banking business in this state. R. S. 1879, secs. 901, 921. *Second.* The act of 1877 had no application to "private bankers." *State v. Kelsey*, 89 Mo. 623. *Third.* The term "private banker" was defined and his duties, with respect to the commencement and conduct of the business, were prescribed by statute. R. S. 1879, secs. 921, 922. *Fourth.* The amendment of 1887 failed to extend the provisions of the act of 1877, so far as to embrace a "private banker." Laws, 1887, p. 162, sec. 1. *Fifth.* The act of 1889 is equivalent to a legislative declaration that a "private banker" was not within the provisions of the act of 1887. R. S. 1889, sec. 3581; *State v. Webster*, 77 Mo. 566. *Sixth.* The liability of a "private banker" is not limited to the amount invested in the business, but is just the same as that of partners conducting any other business. *State v. Kelsey*, 89 Mo. 623. *Seventh.* The court erred in admitting the evidence of King and Coberly, showing that the bank was indebted to them on the eighth of November, 1887, and sixth of December, 1887, when the bank failed. *Eighth.* The court erred in admitting in evidence, over the objection of defendant, the books of the bank, and allowing witness Herndon to testify from the same. *Ninth.* The "Stewartsville Bank" had no legal existence. It could neither sue nor be sued, and an allegation that "it" was in failing circumstances or insolvent, could have no legal significance, and the act of 1887 can only apply to such banking institutions as have a legal existence and may be insolvent or in failing circumstances, and can not be extended by implication. Laws, 1887, p.

162, sec. 1; Sutherland on Stat. Const., secs. 349, 350, 351. (3) The indictment does not allege that H. S. Buck and T. G. McCrosky were in failing circumstances. If necessary to be proven it should have been alleged. (4) The indictment does not charge a larceny. *State v. Herrell*, 97 Mo. 105; *State v. Meyers*, 99 Mo. 107. (5) The court erred in giving instructions numbers 1, 2, 3 and 4, on behalf of the state. The first assumed that there was such a thing as a "private bank," and that such a bank could be in failing circumstances. (6) The instructions given in the case were conflicting and misleading. (7) The court erred in refusing to give defendant's instructions numbers 1, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 and 19. (8) The indictment charged that the money deposited was lawful money of the United States, and the proof did not sustain that allegation. Lawful money is that which is a legal tender in payment of debts. R. & L. Law Dict., "Lawful Money;" 25 Cal. 564. (9) The court erred in overruling defendant's motion to quash the indictment. (10) The court erred in overruling defendant's motion as to sufficiency of transcript, and objecting to being put upon trial while former conviction was in force.

*R. F. Walker*, Attorney General, for the state.

(1) The record shows that the circuit court had jurisdiction of the case. (2) The indictment is sufficient. R. S. 1889, sec. 3581; *State v. Buck*, 108 Mo. 626. (3) Instruction number 3, complained of by appellant, properly declared the law.

BURGESS, J.—Defendant and Thomas G. McCrosky were indicted in the circuit court of DeKalb county for receiving a deposit of $60 as private bankers in the

"Stewartsville Bank," of which they were owners and managers, knowing at the time it was so received that the bank was insolvent or in failing circumstances. The indictment is under section 1350, Revised Statutes, 1879, as amended by the act of 1887. At the April term, 1888, a severance was granted defendant. He then filed his application for a change of venue from said county. No action was taken on this motion until May 22, 1889, when a change of venue was ordered to Harrison county. By agreement between the parties the one application was to apply to all the indictments pending against defendant of which there were seven or nine. The motion for the change of venue containing the agreement is copied into and made a part of the record in this case. On the seventh day of August, 1889, a transcript of the record and proceedings in case number one (that being the number of this case), was filed in the office of the clerk of the circuit court of Harrison county.

The indictment is in two counts, and, omitting the formal parts, is as follows:

"The grand jurors for the state of Missouri summoned from the body of DeKalb county, impaneled, charged and sworn upon their oaths present that Harvey S. Buck and Thomas G. McCrosky late of the county aforesaid, on the eighth day of November, A. D. 1887, at the county of DeKalb, state aforesaid, being then and there owners and managers of a private bank known as Stewartsville bank, the same being a banking institution doing business in said county, a certain deposit of money, to wit, $60, lawful money of the United States, of the value of $60, the money and property of Thos. H. Lake, unlawfully and feloniously did then and there take, have and receive on deposit in said Stewartsville bank, a private banking institution, after they, the said Harvey S. Buck and Thomas G.

McCrosky, owners and managers aforesaid, had knowledge of the fact and well knew that said Stewartsville bank was then and there in failing circumstances; and so the said Harvey S. Buck and Thomas G. McCrosky aforesaid, the money aforesaid, to wit, $60, of the value of $60, the money and property of the said Thomas H. Lake, in manner aforesaid, unlawfully and feloniously did take, steal and carry away, against the peace and dignity of the state.

"The grand jury, for the county and state aforesaid, summoned, impaneled, charged and sworn as aforesaid, upon their oaths aforesaid, further present that Harvey S. Buck and Thomas G. McCrosky, late of the county aforesaid, on the eighth day of November, A. D. 1887, at the county of DeKalb, state aforesaid, being then and there owners and managers of a private bank, known as the Stewartsville bank, the same being a banking institution doing business in said county, a certain deposit of money, to wit, $60, lawful money of the United States, of the value of $60, the money and property of Thomas H. Lake, unlawfully and feloniously did assent to the taking, having and receiving on deposit in said Stewartsville bank, a private banking institution, after they, Harvey S. Buck and Thomas G. McCrosky, owners and managers as aforesaid, had knowledge of the fact and well knew that Stewartsville bank was then and there in failing circumstances; and so the said Harvey S. Buck and Thomas G. McCrosky aforesaid, the money aforesaid, to wit, $60, of the value of $60, the money and property of the said Thomas H. Lake, in manner aforesaid, unlawfully and feloniously did steal, take and carry away, against the peace and dignity of the state."

On May 19, 1891, defendant filed his motion to quash the indictment which was overruled. At an adjournment of the same term held during the month

of August, the defendant filed his written objections to proceeding to trial in the cause which objections are as follows:

"Because the said defendant heretofore, to wit, on the eighteenth day of September, 1890, was, in the Harrison county, Missouri, circuit court, convicted of receiving money on deposit as a private banker at Stewartsville, in the county of DeKalb, the property and money of Thomas Allen, and was, on the eighteenth day of September, 1890, by the said court, sentenced to a term of two years in the penitentiary of the state of Missouri, and that said conviction and sentence is in full force and standing against him, and, therefore, he should not be put upon his trial before the same is set aside or expires, for the reason that the certificate of the circuit clerk of DeKalb county, Missouri, to the transcript of the record and proceedings is not made according to law, and this court has not acquired any jurisdiction over the defendant by reason thereof, and because the transcript fails to show that said indictment was returned into court in the presence of the grand jury and their foreman." This motion was also overruled.

Upon a trial had, defendant was convicted and his punishment fixed at two years' imprisonment in the penitentiary. From the judgment and sentence he appealed to this court.

The evidence shows that the deposit was made, and the bank failed, and that its doors were closed as alleged in the indictment.

It is contended by counsel for defendant that the circuit court of Harrison county had no jurisdiction of the case; that the change of venue was ordered in case number four, while defendant was tried and convicted in number one. This they claim is shown from the fact that the figure "4" is found on the right of the

title of this cause, in the motion for, and the order of the court in changing the venue. Unless the order granting the change was made in this cause the circuit court of Harrison county acquired no jurisdiction, as it could not have been removed from the county of DeKalb to the county of Harrison by mere stipulation. *State v. Buck*, 108 Mo. 622. What significance the figure had under the circumstances, we are unable to conceive. Standing alone as it does without any explanation whatever, so far as the record discloses, we would not be justified in assuming that the motion was filed, and the order granting the change of venue pertained to some cause other than this. Section 3232, Revised Statutes, 1889, provides that the clerks of the courts of record shall, within thirty days after the expiration of each term of their respective courts, attach together the pleadings and other papers forming the record, in each cause in which a final judgment shall have been rendered at such term and we must indulge the presumption that the clerk complied with the behests of the statute in this case.

But if there were any room for doubt as to whether or not the motion for the change of venue and the order in pursuance thereof granting it were in this case, the certificate of the clerk of the circuit court of Harrison county, attached to the transcript in which it is stated "that the above and foregoing is a true and correct transcript of the record and bill of exceptions, as the same is of record and on file in my office in the above entitled cause" conclusively shows that the order granting the change of venue was made in this cause.

In *State v. Buck*, 108 Mo. 622, the indictment, of which the one in the case in hand is almost an exact copy, after a careful consideration of all the objections urged against it, was held to be good, and no good

reason has been suggested why we should not adhere to the law thus announced.

The first, second and fourth instructions given on the part of the state are criticised by the defendant, but we are unable to see any substantial objection to them. They seem to have been predicated upon the facts as disclosed by the evidence and to contain a correct exposition of the law as we understand it.

There was no error committed in refusing instructions on the part of defendant.

The third instruction given on the part of the state is also assailed. It is as follows:

"3. The court instructs the jury that the failure of the banking institution in this cause is *prima facie* evidence of the knowledge on the part of the managers and owners that the same was in failing circumstances on November 8, 1887. The court instructs the jury that *prima facie* evidence is such that raises such a degree of probability in its favor that it must prevail, unless it is rebutted or the contrary proved."

The instruction is predicated upon section 1350, Revised Statutes, 1879, as amended by the act of 1887, section 3581, Revised Statutes, 1889, which is as follows:

"If any president, director, manager, cashier or other officer of any banking institution, or the owner, agent or manager of any private bank or banking institution doing business in this state, shall receive or assent to the reception of any deposit of money or other valuable thing in such bank or banking institution, or if any such officer, owner or agent shall create or assent to the creation of any debts or indebtedness by any such bank or banking institution, in consideration or by reason of which indebtedness any money or valuable property shall be received into such bank or banking institution, after he shall have had knowledge of the

fact that such banking institution or the owner or owners of any such private bank is insolvent or in failing circumstances, he shall be deemed guilty of larceny, and upon conviction thereof shall be punished in the manner and to the same extent as is provided by law for stealing the same amount of money deposited, or valuable thing:    *Provided*, that the failure of any such bank or banking institution shall be *prima facie* evidence of knowledge on the part of any such officer or person that the same was insolvent or in failing circumstances when the money or property was received on deposit.''

The *gravamen* of the offense was in receiving the money on deposit with the knowledge on the part of the defendant that the bank was insolvent or in failing circumstances, and the proviso to the statute makes the subsequent failure of the bank *prima facie* evidence, not alone of the insolvency of the bank at the time the money was received, but of the knowledge of the persons therein named of that fact.    Section 28, article 2, of the constitution of this state, provides that ''the right to trial by jury, as heretofore enjoyed, shall remain inviolate.''    Defendant's contention is that the statute is in conflict with the provision of the constitution quoted, in that it takes away from the jury the right to determine the weight of evidence for themselves; that which the statute makes *prima facie* evidence.    Upon this question there is some conflict in the authorities.

Mr. Cooley, in his work on Constitutional Limitation [6 Ed.], p. 374, says:    ''Perhaps the most important of the protections to personal liberty consists in the mode of trial which is secured to every person accused of crime.    *  *  *    The mode of investigating the facts, however, is the same in all; and this is through a trial by jury, surrounded by certain safe-

·guards which are a well understood part of the system, and which the government can not dispense with."

In *Wynehamer v. People*, 13 N. Y. 446, SELDEN, J., in passing upon a question similar to the one now under consideration, says: "Precisely how far the legislature may go, in changing the modes and forms of judicial proceeding, I shall not attempt to define; but I have no hesitation in saying that they can not subvert that fundamental rule of justice which holds that every man shall be presumed innocent until he is proved guilty."

In *State v. Beswick*, 13 R. I. 211, the statute under consideration prohibiting the sale of intoxicating liquors, provides that it shall not be necessary to prove an actual sale of liquors * * * in any building, shop, saloon, place or tenement,· in order to establish the fact that liquors are kept there for sale; but the notorious character of any such premises, or the notoriously bad or intemperate character of persons frequenting the same, or the keeping of the implements or appurtenances actually pertaining to grog shops, tippling shops, or places where such liquors are sold, shall be *prima facie* evidence that said liquors are kept on such premises for purposes of sale. It was held that the statute making the recited circumstances *prima facie* evidence against an accused, was unconstitutional and void, in depriving the accused of the protection of the common law principle that every person is to be presumed innocent until he is proved guilty, and repugnant to the constitutional provision of that state that an accused shall not "be deprived of life, liberty, or property, unless by the judgment of his peers or the law of the land."

In *State v. Divine*, 4 S. E. Rep. 477, the court passed upon a statute which provides that whenever any live stock shall be killed by the engines or cars on

any of the railroads mentioned, it shall be a misdemeanor, and the president, receiver, and the superintendent of such road, and also the engineer and conductor in charge of the train or engine by which such killing or injury is done, may be indicted for such killing or injury, which, when proved, shall be *prima facie* evidence of their negligence. In that case the defendant was not on the train when the accident occurred, and had no personal relation to it, except such as resulted from his position as a higher officer of the road; making the offense one by construction, and it is largely upon the absence of any connection by defendant with the offense for which he was charged that the law was held unconstitutional. The case, however, followed with approval the case of *Wynehamer v. People, supra.*

The question now under consideration was not involved in the case of *Clark v. Mitchell*, 64 Mo. 564, and what is said in that opinion with respect to the right of trial by jury was merely by way of argument. Upon the question in issue, we are entirely satisfied with that opinion.

As announcing a contrary rule to that announced by the authorities heretofore cited, it has repeatedly been held that the legislature has the right to declare what shall be presumptive evidence of any fact. *Hand v. Ballou*, 12 N. Y. 543; *People v. Mitchell*, 45 Barb. 210; *Hickox v. Tallman*, 38 Barb. 608; *Donahue v. O'Conor*, 45 N. Y. Superior Court Rep. 297; *Howard v. Moot*, 64 N. Y. 262; *Adkins v. Railroad*, 36 Mo. App. 652; *Heman v. Wolff*, 33 Mo. App. 200; *Ess v. Bouton*, 64 Mo. 105; *State v. Kingsley*, 108 Mo. 135.

Mr. Rice, in his work on Evidence, volume 3, section 27, says: "Legislation of the character in question, as to the rules of evidence, is not without precedent, nor is its validity a question unadjudicated. In *Com. v.*

*Williams,* 6 Gray, 1, Williams was indicted and convicted for being a common seller of spirituous and intoxicating liquors.   The statute concerning the manufacture and sale of spirituous and intoxicating liquors, under which the indictment was found, provided, among other things, that 'delivery in or from any store, shop, warehouse, steamboat or other vessel, or any vehicle of any kind, or any building or place other than a dwelling house, shall be deemed *prima facie* evidence of a sale.'   The trial judge instructed the jury that the delivery by the defendant of such liquors in his place of business, the same not being a dwelling house, without evidence of payment therefor, was *prima facie* evidence of sale by the defendant, unless explained or controlled by other evidence.   It was contended, upon appeal, before the supreme court, that the provision was unconstitutional, because it was unreasonable, contrary to the rules and principles of the common law, an encroachment upon the judicial department, and subversive to the right of trial by jury.

"The court held the statute to be constitutional, and the view taken of it is that it only prescribes, to a certain extent and under particular circumstances, what legal effect shall be given to a particular species of evidence, if it stands entirely alone and is left wholly unexplained; that this evidence neither conclusively determines the guilt or innocence of the party who is accused, nor withdraws from the jury the right and duty of passing upon and determining the issue to be tried; that the purpose and effect of the clause of the statute are to simply give a certain degree of artificial force to a designated fact until such explanations are afforded as to show that it is at least doubtful whether this proposed statutory effect ought to be attributed to it, but the fact itself is still to be shown and established

by proof sufficient to convince and satisfy the minds of the jurors, and if this proof is furnished, and the delivery of any quantity of spirituous liquor, in a place other than a dwelling house is fully shown, this will not be conclusive against the party charged with having made the sale of it; that making out a *prima facie* case does not change the burden of proof but is only the result of that amount of evidence which is sufficient to counterbalance the general presumption of innocence, and warrant a conviction, if the fact so established be not encountered and controlled by other evidence tending to modify its effect, or to so explain it as to render the statutory inference from it too uncertain and improbable to be relied upon; the burden remains continuously on the government to establish the accusation charged in the indictment or information. *Com. v. Kimball*, 24 Pick. 373; 35 Am. Dec. 326; *Com. v. McKie*, 1 Gray, 61; 61 Am. Dec. 410.

"In *Com. v. Wallace*, 7 Gray, 222, where the indictment was for an unlawful sale of spirituous and intoxicating liquors, it was again contended that the provision in question was unconstitutional, and applied only where a naked delivery was proved without any accompanying circumstances; and the trial judge was requested, *inter alia*, to so charge; but he refused, and instructed the jury that, if there was proved beyond a reasonable doubt a delivery of intoxicating liquor by the defendant from any building or place other than a private dwelling house or its dependencies, it would be *prima facie* evidence of a sale, and would warrant a conviction, but that the circumstances under which the delivery was made might rebut the presumption or the presumption might be rebutted by proof. The supreme court overruled the exceptions taken to the instructions given. *Com. v. Rowe*, 14 Gray, 47, maintains the same doctrine, and that the burden is on the government to

prove the sale beyond a reasonable doubt. See, also *Homes v. Hunt*, 122 Mass. 505; 23 Am. Rep. 381.

"A statute of Maine provided that whenever an unlawful sale of intoxicating liquor is alleged, and delivery proved, it shall not be necessary to prove a payment, but such delivery shall be 'sufficient evidence of sale.' This provision was held to be constitutional. 'Delivery, in the absence of all other proof,' says the court, 'is made sufficient evidence of sale—sufficient when no other proof is offered. It is open to disproof from every source. It may be explained by attendant circumstances. The party delivering is not estopped by the fact of delivery. * * * The fact of delivery is deemed sufficient, if not explained by the circumstances accompanying the delivery, or if the inference, is not negatived by disproof.' *State v. Hurley*, 54 Me. 562."

In *State v. Kingsley*, 108 Mo. 135, it was held that section 1 of the act of 1891 (Laws of 1891, p. 159), which provides that every person who shall obtain board or lodging by means of any trick or deception, false or fraudulent representation, and shall fail or refuse to pay therefor, shall be held to have obtained the same with intent to cheat and defraud, and shall be deemed guilty of a misdemeanor, is not in conflict with the constitution of the state, upon the ground that it denies to the accused a trial by jury; that under the act, it is left to the triers of fact to determine whether the board was obtained by means of false and fraudulent representations and not paid for, and the legislature had the power to declare these facts, when proved, to constitute evidence of an intent to cheat and defraud.

In *Board of Commissioners v. Merchant*, 103 N. Y. 143, the court says: "The general power of the legislature to prescribe rules of evidence and methods of

proof is undoubted. While the power has its constitutional limitations, it is not easy to define precisely what they are. A law which would practically shut out the evidence of a party and thus deny him the opportunity for a trial would substantially deprive him of due process of law. It would not be possible to uphold a law which made an act *prima facie* evidence of crime over which the party charged had no control and with which he had no connection, or which made that *prima facie* evidence of crime which had no relation to a criminal act and no tendency whatever by itself to prove a criminal act. But so long as the legislature, in prescribing rules of evidence, in either civil or criminal cases, leaves a party a fair opportunity to make his defense and to submit all the facts to the jury to be weighed by them, upon evidence legitimately bearing upon them, it is difficult to perceive how its acts can be assailed upon constitutional grounds." *People v. Cannon*, 139 N. Y. 32.

It was only about one month from the date of the deposit until defendant's bank failed and closed its doors. This of itself had a strong tendency to show that the bank was in failing circumstances, if not in fact insolvent, at the time the deposit was received, and the law which makes its failure so recently thereafter *prima facie* evidence of knowledge upon the part of its officers that it was insolvent or in failing circumstances at that time, is neither unjust nor unconstitutional. As a banker, it was defendant's business to know the financial condition of his bank at any and at all times. The statute has direct connection with, and reference to, those who own and operate banks, and does not embrace within its provisions, any person not connected therewith. Here the act which makes the failure of any private bank *prima facie* evidence of the knowledge on the part of the owner, agent or manager of any private bank or

banking institution doing business in this state that the bank was in failing circumstances or insolvent at the time of receiving any deposit has some relation to, and furnishes some evidence of, the alleged offense. To make receiving money on deposit under such circumstances *prima facie* evidence of knowledge on the part of the owner of the bank that it was then in failing circumstances or insolvent, violates no constitutional guaranty. It leaves a party thus connected with the bank ample opportunity to make his defense. The party can be a witness in his own behalf and it can never be difficult for him to show what the facts really are. If the bank has been robbed by some trusted clerk, without the knowledge of its officers, or sudden or unexpected failures of its correspondents have brought about its insolvency or failing condition, such and other matters of like character are of easy explanation.

Receiving the money on deposit, knowing that the bank was in failing circumstances or insolvent, was in itself unlawful, the proof of excuse or justification for which, was on the defendant and if he fail to excuse or justify himself, the law implies a criminal intent. *State v. Patterson*, 116 Mo. 513, and authorities cited; *State v. McCance*, 110 Mo. 398. The burden of proof is not really changed. The statute enables the state to make a *prima facie* case by proof of the deposit and failure of the bank. But the defendant can show the circumstances attending the failure, and any facts tending to exonerate him from liability, and then on the whole case, the burden still rests on the prosecution to establish his guilt beyond a reasonable doubt. *People v. Cannon, supra.* The presumption of innocence with which defendant is clothed, and which never shifts, rests with him throughout and notwithstanding the *prima facie* case made out by the state, it must still go

further. "A *prima facie* case will not warrant a conviction." *State v. Rector*, 23 S. W. Rep. 1074.

It is a well known rule of common law, that when one person uses upon another, at some vital part, a deadly weapon, the law presumes the intent is to kill, and that the possession of stolen property recently after its theft raises a presumption that the person in whose possession it is found is the thief. Why then may not the legislature pass a law making a certain state of facts connected with what is declared by statute to be a criminal offense, *prima facie* evidence of the truth thereof? We are unable to see why it can not do so, nor has any good reason been suggested to us, why it may not be done. We therefore think there was no error committed in giving the instruction.

We come now to the consideration of the only remaining question for determination, which is the action of the court in overruling defendant's motion for a postponement of the trial because of the fact that he was at the time of the trial of this cause under conviction and sentence in the same court for a felony, a similar offense to the one for which he was convicted in this case.

From the time of the conviction and sentence of defendant in the first case he was in legal contemplation in a custody different from that of the circuit court, and could not be put upon his trial in another case until he had served out his time for which he had been sentenced in the first, or until the judgment and sentence in the first case had been set aside or reversed; until then it is to be deemed of full force and effect.

In *Ex parte Meyers*, 44 Mo. 282, the court says: "The courts in this state have no common law jurisdiction in felonies, and the powers that they exercise are such as are conferred by statute only. * * * There is no provision anywhere made, that I have been able to

The State v. Buck.

find, where separate sentences can be passed upon a prisoner, and he be subjected to more than one term of punishment, unless the different convictions were had at the same term, and both were obtained previous to the sentence. But there is no authority for convicting a prisoner of felony at one term of the court, and regularly passing sentence upon him, and then remanding him to jail till the next succeeding term, and again convicting and sentencing him for another felony."

In *State v. Connell*, 49 Mo. 282, the court says: "The *Meyers case* was decided upon the statute. The criminal court had sentenced the defendant at one term, and then held him in custody on another indictment and tried and sentenced him at a subsequent term, and he was sent up and imprisoned on both sentences. We held that under the provisions of the statute the last conviction was wrong; that the law required that where there were two convictions they must both be obtained at the same term, and take place before the sentence is pronounced in either case." *Ex parte Jackson*, 96 Mo. 116.

In *Ritter v. Democratic Press Company*, 68 Mo. 459, the court, in speaking with reference to the effect of a judgment of conviction for felony which had been appealed from, says: "The subsequent reversal of that judgment by this court, could not be anticipated by the circuit court."

For these reasons we are constrained to hold that the court committed error in overruling defendant's motion for a postponement of the trial and compelling him to go to trial while the judgment against him and the sentence in the first case remained in full force and effect. The judgment is reversed and cause remanded. All concur.