[No. 3983.]

McClure v. The People.

1. CRIMINAL LAW—RECEIVING DEPOSITS IN INSOLVENT BANK—LARCENY—INFORMATION.
In a prosecution of a bank president under section 222, Mills' Ann. Stats., providing that if the president of any bank " shall receive or assent to the reception " of any deposit of money in such bank after he shall have knowledge of its insolvency he shall be guilty of larceny, an information that charges in one count that the defendant " did receive and assent to the reception " of a deposit after he had knowledge of the insolvency, is not invalid as charging two separate offenses in one count.

2. SAME—EVIDENCE—PRIMA FACIE PROOF OF KNOWLEDGE.
In a prosecution of a bank president under the statute making the receiving of deposits in insolvent banks larceny, proof of the receipt of the deposit and the failure of the bank three days thereafter, was *prima facie* proof of knowledge of insolvency on the part of defendant. That part of the statute making a failure of a bank at any time within thirty days after receiving a deposit *prima facie* evidence of knowledge of insolvency is constitutional and valid.

3. SAME—SPECIFIC INTENT TO DEFRAUD—CRIMINAL NEGLIGENCE.
In a prosecution of the president of a bank for larceny for receiving, or assenting to the reception of, deposits knowing the bank to be insolvent, it is not necessary that a specific intent to defraud or harm the depositor shall be shown on the part of defendant, or that defendant had actual knowledge of the insolvency of the bank, if his ignorance of its insolvency was due to his own criminal negligence.

4. Same.

A banker or officer of a bank cannot exempt himself from criminal liability under the statute for receiving deposits in an insolvent bank, by intentionally absenting himself from the bank and abstaining from participation in its management, and purposely neglecting to avail himself of means of information as to its financial condition, or by showing that if he had given attention to its business, on account of his ignorance of banking methods he would not have been able to ascertain its true condition.

5. Same.

The president of a bank cannot relieve himself of criminal liability under the statute, for receiving deposits in an insolvent bank, by casting the responsibility for insolvency upon other officers of the bank who were more immediately and directly contributory to it, by a plea of ignorance of the conditions of the bank when that ignorance is due entirely to his criminal negligence in failing to acquaint himself with its affairs, or to his natural inability to acquire knowledge had he exercised his faculties to that end.

6. Same.

In the prosecution of a bank president, for larceny under the statute, for receiving and assenting to the reception of a deposit after knowledge of the bank's insolvency, it is not essential to a conviction that he should have assented to that particular deposit, or that he should have acquiesced in its reception after he obtained actual knowledge that it had been made. His recognition of the general authority of the teller to receive deposits without taking any steps to prevent such action, after he knew, or, in law, is charged with knowledge of, the insolvency, is an assent to the reception of the deposit by his employé.

7. Same—Evidence of Diligence.

The president of a bank is not an insurer of its solvency, and in a prosecution under the statute for receiving a deposit in an insolvent bank, the president is only held to that degree of care and diligence to know the financial condition of the bank which an ordinarily prudent business man would have done. If he exercised such care and thereby obtained information which honestly led him to believe that the bank was solvent at the time of the deposit, then he would not be guilty, although mistaken in his judgment, and it was error to refuse to admit evidence tending to show what steps the defendant had taken to inform himself regarding the solvency of the bank.

8. Same—Instructions.

In a prosecution of the president of a bank, under the statute for receiving a deposit in an insolvent bank, an instruction that in effect advised the jury that as long as defendant was president of the bank he was presumed to know, and it was his duty to know, its

conditions as to solvency or insolvency, without regard to what steps he may have taken to ascertain this fact, was erroneous.

Chief Justice Campbell while assenting to the propositions of law in the last two paragraphs, dissents from the conclusions of the majority of the court as to the character of the evidence offered and rejected and as to the interpretation of the instruction noted.

*Error to the District Court of Montezuma County.*

The defendant (plaintiff in error) was convicted of statutory larceny in that, as president of the Bank of Rico, which was incorporated and doing a general banking business under the laws of the state of Colorado, he received and assented to the reception of a certain deposit in said bank knowing at the time that the institution was then insolvent.

The statute on which the information was based declares: "If * * * any president * * * of any * * * bank, or banking institution, * * * shall receive or assent to the reception of any deposit of money * * * in such bank or banking institution, * * * after he shall have had knowledge of the fact that such * * * bank or banking institution is insolvent, he shall be deemed guilty of larceny," etc.   Session Laws, 1885, p. 50; 1 Mills' Ann. Stats. sec. 222.

Messrs. Gerry & Taylor, Mr. Chas. A. Johnson and Mr. A. B. Seaman, for plaintiff in error.

Mr. D. M. Campbell, attorney general, Mr. Calvin E. Reed and Mr. Dan B. Carey, for the people.

Chief Justice Campbell delivered the opinion of the court.

The propositions urged by the plaintiff in error and relied upon for a reversal of the judgment may be thus stated: First, the information is double; second, the evidence of the people admitted by the trial court failed to show defendant's personal knowledge of the insolvency of the bank; and evidence offered by the defendant to show his lack of knowledge

thereof, and as an excuse for his ignorance, was erroneously rejected.

1. It is strenuously argued by counsel that the receiving of a deposit, in the circumstances named in the statute, is one offense, and the assenting to its reception is another and a distinct offense, and that while the two may be separately set forth in the same information, it is improper to combine them in one count.

Unquestionably, the rule at common law, as well as in most of the states of the Union, is that offenses which are entirely distinct and separate and require different proof may not be included in the same count of an indictment, even though they may, when relating to the same transaction, be included in different counts thereof. A number of authorities have been called to our attention under which, it is said, this information is bad.

The case upon which plaintiff in error seems mainly to rely is *United States v. Cadwallader*, 59 Fed. Rep. 677, where the indictment was for violating the national bank laws. The statute prohibited the "embezzling, abstracting or wilfully misapplying the moneys" of the bank, and the court held that each of these acts constituted a separate crime or offense, which may be joined in one indictment, but must be stated in separate counts. The federal statute was really decisive of the point, but the court, in part, rested its conclusion upon the rules of common-law pleading. In the opinion the district judge used this language:

"If the statute describes only different stages, degrees, or phases of one and the same offense, these degrees or phases may undoubtedly all be set forth and charged in the same count of the indictment; but if the statute defines different and distinct offenses, each requiring different proof to establish it, there can be little doubt that they should not be joined in the same count, though they may all, or any of them, be united in different counts in the same indictment."

The controlling question seemed to be that, in the judgment of the court, the proof to establish either one of these

offenses would be wholly inadequate to make out a case un-
der either of the others.   A number of cases are referred to
by the learned judge as recognizing the principle upon which
the decision was put.   Other cases cited by plaintiff in error
which are, in some respects at least, in his favor, are *People
v. Cooper*, 53 Cal. 647, *State v. Haven*, 59 Vt. 399, *Larison
v. State*, 49 N. J. Law, 256, and *People v. Tower*, 135 N. Y. 457.

In most, if not in all, of the authorities relied upon by him,
some material element, not present in the case at bar, dif-
ferentiates them from it.   Fairly considered, none of them
controls the decision here.

Our statute seems to be substantially the same as that of
Missouri, and counsel say that the decisions there are in their
favor.   In *State v. Wells*, 134 Mo. 238, it was held that where
a defendant was charged with receiving a deposit a convic-
tion could not be sustained where the evidence was only to
the effect that he assented to its reception.   In passing we
may say that, in many respects, the facts of that case are
essentially different from the facts of the case in hand.   But
this authority is cited to the proposition that the receiving
and assenting to the reception, are different offenses.   The
facts of the case did not call for any decision as to whether
or not the act of receiving and the act of assenting thereto
might, or might not, be charged in the same count ; and there-
fore, if there is language in the opinion either for or against
the practice, it would be *obiter*.

If, however, any legitimate inference can be drawn there-
from one way or the other, it is that such an union may be
made, for the court in its opinion cites with approval, *State v.
Batson*, 31 Mo. 343, and *State v. West*, 21 Mo. App. 309.   In
the former case the indictment was under a statute declaring
that every person who " shall wilfully and maliciously break,
destroy or injure the door or window of any dwelling house "
shall upon conviction be adjudged guilty, etc. ; and the in-
dictment, following the language of the statute, charged in
one count that the defendant " broke *and* injured the door
of a dwelling house," and in another count that he " broke

with force and arms the windows of a dwelling house." The court said:

"The terms 'break, injure or destroy' being used disjunctively in the statute, the offense is well described by charging it to have been committed as in the second count by a breaking alone, or as in the first by both a breaking and injuring. It is an offense to wilfully and maliciously break, destroy or injure; to do *either* act is to commit an offense, and one or all these things may be charged in an indictment according to the circumstances of the case."

In the latter case the indictment was under a statute providing: "If any public officer * * * shall be intoxicated while in the performance of any official act or duty, or shall become so intoxicated as to be incapacitated to perform any official act or duty, * * * he shall be declared guilty of a misdemeanor in office," etc. The indictment was based on the second clause, and in speaking to the objection urged against the same the court said:

"It is to be borne in mind that the section of the statute is in the disjunctive and contains two offenses. The first is for being intoxicated while in the performance of any official act or duty; and the second is for becoming so intoxicated as to be incapacitated to perform any official act or duty, at the time and in the manner required by his office. It was competent to indict him, according to the facts, for either or both of these offenses."

In *State v. Sattley*, 131 Mo. 464, the indictment against the defendant contained two counts, one for receiving a deposit, the other for assenting to the creation of an indebtedness, and the court sustained a general verdict of guilty, and upheld a sentence as for one offense on the ground that the several offenses charged arose out of one and the same transaction. The court in that case did not hold that these offenses might not be charged in one count. That they might be stated separately is not at all conclusive that they may not be combined. And the general verdict would not have been upheld, and on principle could not be sustained, except on

the ground that receiving and assenting are but different ways of charging the same offense, and when they relate to the same transaction, and are the act of one and the same person.

In *Clifford v. State*, 29 Wis. 327, it was held where a statute makes it a crime to do any one of several things mentioned disjunctively, all of which are punished alike, it is a general rule that the whole may be charged conjunctively in a single count as a single offense; for, in that case, all are regarded as constituting but one offense, and the conviction or acquittal is regarded as a sufficient bar to all or either, whether separately or conjointly pleaded.

In *State v. Bielby*, 21 Wis. 206, defendant was convicted of vending, selling, dealing and trafficking in and giving away liquors. Dixon, Chief Justice, in replying to an objection to the form of the indictment, said: "It is objected that the complaint is bad for duplicity, because the several acts named in the statute, if charged separately, would each constitute a distinct offense. This may be so, but still the complaint is not double. An indictment in such case may pursue the language of the statute, charging the commission of the several acts conjunctively, and as constituting, all together, one offense; in which case there can be but one conviction and one punishment, as for one offense."

*Hinkle v. Commonwealth*, 4 Dana (Ky.), 518, was a case where the defendant was convicted under an indictment charging him with setting up and keeping a gaming table, and inducing another to bet at it, and the court says: "Although the setting up of a gaming table may alone be an indictable offense, the keeping of such table and the inducing of any person to bet upon it, another, when each shall have been committed by different persons, or at different times; nevertheless, as they are co-operating acts, constituting altogether one offense, when committed by the same person, at the same time, an indictment for that *combined* act in violation of law, may properly charge the whole in one count; and but one punishment can be inflicted, as for one offense."

In *State v. Nelson*, 29 Mo. 329, it was held that the buying and receiving and aiding in concealing stolen goods constitute but one offense which may be committed in three different modes, and all three may be charged in the same count of the indictment.

In *State v. Price*, 6 Halstead (11 N. J. Law), 203, the indictment charging the defendant in the same count with burning, and causing to be burned, a dwelling house, was held good.

*Byrne et al. v. State*, 12 Wis. 519, 529, seems quite in point here, for the indictment charged the defendant with "knowingly receiving and sanctioning the reception of an illegal vote," and the language of the court, by Dixon, Chief Justice, seems particularly appropriate:

" The rule is well settled that, where a statute makes either of two or more distinct acts, connected with the same general offense and subject to the same measure and kind of punishment, indictable separately and as distinct crimes, when each shall have been committed by different persons or at different times, they may, when committed by the same person at the same time, be coupled in one count, as constituting altogether but one offense. In such cases the several acts are considered as so many steps or stages in the same affair, and the offender may be indicted as for one combined act in violation of the law. * * * There can be no doubt that the receiving and sanctioning the reception of a vote, under the circumstances stated in the statute, are distinct offenses, and when committed separately may be indicted as such, but the indictment is not double or uncertain because both are joined in the same count for the reasons above stated."

If that reasoning is good, and it seems to us to be so, certainly it applies with equal force to the reception, and assenting to the reception, of a deposit. It has frequently been held that an indictment for forgery which charges that the defendant " forged and caused to be forged " is good. See, also, *Commonwealth v. Twitchell*, 4 Cush. 74, *Ben v. The State*, 22 Ala. 9, *State v. Fletcher*, 18 Mo. 425, *State v. Morton*, 27 Vt.

310, Bishop's Directions & Forms, §§ 19–21, Bishop on Statutory Crimes, § 244, 1 Bishop on Crim. Procedure, §§ 434–453, and *Boldt v. The State*, 72 Wis. 7.

We have thus reviewed some of the authorities cited, but might content ourselves with citing only the decisions of our own court. In *Pettit v. The People*, 24 Colo. 517, and *Chipman v. The People*, 24 Colo. 520, the same doctrine is laid down. It is true that in most of these cases the question of duplicity was decided in misdemeanor cases, and it is urged that a different rule applies to felonies. There might be ground for this distinction at the common law when almost all felonies were punishable by death and followed by forfeiture of the offender's lands and goods, but under the modern practice, and under the statutes, of most of the states of the union, we are of opinion that there is no valid distinction in this respect between informations charging misdemeanors and those relating to felonies. *State v. Warner*, 60 Kan. 94; 10 Enc. Pl. & Pr. 532 *et seq.*, and cases cited.

In *Robertson v. The People*, 20 Colo. 279, the indictment, under the same statute, was precisely the same as that here, in that it charged defendant with receiving and assenting to the reception of certain deposits of money. The opinion does not refer to this, and it does not appear whether an objection thereto was made. We make the reference only for the purpose of showing a practice which has long prevailed in this state whereby under statutes enumerating several acts in the alternative, the doing of any of which is subjected to the same punishment, all of such acts may be charged conjunctively in one count as one offense.

If the position of plaintiff in error is correct that the receiving of a deposit and the assenting to its reception by one person at the same time (as the charge here is), are entirely distinct and separate offenses in the sense contended for, then so much of the act as punishes one who assents to the reception of a deposit is void as not properly coming within the title of the act, which provides only for the punishment of a person receiving deposits ; and indeed such is the contention

of counsel. But the same objection would pertain to the act in relation to larceny of live stock, found in Session Laws of 1891, 130 ; but this act in *In re Pratt*, 19 Colo. 138, has been held constitutional.

We are of opinion that where, as in the information here, the receiving of a deposit and the assenting thereto are charged as having been done by the same person at the same time, and relate to the same transaction, and the punishment for both or either is the same, they may be combined in one count, and together constitute but one complete offense for which there can be but one punishment. In other words, where two or more acts, stated in the statute disjunctively, either of which is an offense by itself if done by different persons or at different times, when done by the same person and at the same time and relate to the same transaction and are followed by the same penalty, they may be united in one count of an indictment or information, as constituting but one offense.

2. The Bank of Rico was organized under the state banking laws. It had a president (the defendant McClure), a vice president and a cashier. The defendant resided in the town of Montrose, about a hundred miles distant from the town of Rico where the business of the bank was carried on. He was rarely present at the bank,—probably not more than once or twice a year,—and the management was exclusively entrusted to the other officers named. The defendant did not deny the insolvency of the bank, but maintained that he had no personal knowledge of its affairs. He was not present at the bank, or in the town of Rico, at the time the deposit in question was received into the bank. It was, on the contrary, received by an employé of the bank whose duty, among other things, was to receive deposits in the ordinary course of business.

The concluding portion of the statute under which the indictment was framed provides that the failure of a bank at any time within thirty days after a deposit is *prima facie* evi-

dence of knowledge on the part of the person charged that such bank was insolvent at the time of its reception.

This bank failed within three days after the deposit was made for receiving and assenting to which the defendant was informed against. The fact of this failure, then, if the statute be valid, was *prima facie* evidence of defendant's knowledge of the bank's insolvency. The proof is clear that the bank was insolvent.

The validity of this portion of the act is attacked by plaintiff in error, but its constitutionality was settled by the decision of this court in *Robertson v. The People, supra,* and in addition thereto, supported as it is by the cases cited in the opinion, we refer to other subsequent decisions under similar provisions. *Meadowcroft v. The People,* 163 Ill. 56 ; *Brown v. The People,* 173 Ill. 34; *State v. Buck,* 120 Mo. 479; *State v. Beach,* 147 Ind. 74; s. c., 36 L. R. A. 179.

There was, then, before the court a *prima facie* case of knowledge of insolvency made out, and unless it was overcome by evidence produced in behalf of the defendant, or rejected, under his offer, the proof was sufficient in this respect to sustain the conviction; and this presents the most important question in the case.

3. The theory of the people was that the defendant had reorganized this bank, had induced the public to deal with it as a safe and solvent institution, had given it credit and standing in the community by the use of his name as president, which was uncontradicted, and in the circumstances, occupying the position he did, it was his official duty to know the condition of the bank, and that he could not be permitted as a defense to plead ignorance or want of knowledge of its insolvency in the manner attempted.

Upon the other hand, the defendant, in order to show lack of knowledge of, while not denying, the bank's insolvency, offered to show that he did not reside in the town in which the bank was doing business, gave little or no attention to it, that the actual management and control were in the hands of others, that he did not possess any actual knowledge what-

ever as to its condition.  To excuse himself for not knowing about its financial condition, he offered to show that he was an illiterate man, possessing no knowledge of banking or bookkeeping, and that he was totally unable to determine from the books of the bank its condition, even if he had made an examination with that purpose in view; that he was unacquainted with the people of the town of Rico, and with the value of the securities held by the bank; that he had no personal knowledge of their value, and was dependent for what information he did have upon representations made to him by the officers in charge.  These representations were that on their face the securities were double the total liabilities of the bank.  He offered, further, to produce evidence showing the entire history of the bank and his connection with it; that, among other things, the books had been fraudulently and improperly kept by the officers in charge, that peculations by them of the bank's assets had been made, and that after the failure the cashier, upon whom he placed the responsibility for the failure, had absconded.  Such, in substance, as stated by counsel for plaintiff in error, was the character of testimony which he sought to introduce.  The court refused to admit it, and accepted the theory of the prosecution which has already been briefly stated.

The specific errors assigned to the rulings upon the evidence and to the action of the court in giving and refusing instructions need not be separately considered, for whether such rulings and acts are correct or erroneous depends entirely upon our decision as to which of the two theories govern.  If the court was right in rejecting the offer of evidence, it was also right in its ruling upon the instructions, for the one ruling was entirely consistent with the other.

The court in one of its instructions told the jury that, under the law of this state, a crime consists in the violation of a public law in the commission of which there shall be a union, or joint operation, of act and intention, or criminal negligence.  This is in the exact language of the statute. But counsel for plaintiff in error says that in this kind of a

crime, criminal negligence cannot take the place of intention or guilty knowledge.

In *State v. Tomblin*, 57 Kan. 841, the court held that it was proper for the jury to take into consideration the defendant's relation to the bank as a managing officer and the duties he owed to it, for the purpose of determining whether he actually knew its insolvent condition; but that *mere* negligence would not render him guilty of a crime; and to the same effect is cited *People v. Comstock*, 115 Mich. 305. The Michigan case is not in point for the statute construed in terms declared the offense created thereby was one that involved an intent to defraud, and the court decided that a specific intent was meant.

*State v. Warner*, *supra*, is cited as probably the strongest case in support of the contention of plaintiff in error. The defendant was charged as having been the president of an incorporated bank which was insolvent, and having accepted and received deposits, knowing the bank to be insolvent. The court there held that, in order to sustain a conviction, the proof must show that the defendant had some direct personal connection with the receipt or acceptance of the deposit. The fact that he was the president, and in a back room of the bank at the time the deposit was received, and that he knew that the institution was open for business, were held insufficient to sustain his conviction under such charge.

The statute of Kansas is not exactly the same as ours, and the court held that, as framed, it seemed to denounce its penalties against the individual who should actually and physically take deposits into the bank when he knows it to be insolvent, and also against all others who should knowingly connive at their reception. The court expressly declined to pass upon the question whether the evidence given at the trial was sufficient to uphold a charge against the defendant of having permitted or connived at the reception of the deposit, but only that it was not sufficient to sustain the charge of having received it directly. So it will be seen that the case is not authority as to that part of the present information which

charges the defendant with assenting to the reception of a deposit, and is squarely opposed to the decisions of the courts of other states, under statutes more nearly like ours, which declare the doctrine that an officer of a bank may be criminally liable for the act of an employé who physically receives the deposit. *State v. Cadwell*, 79 Iowa, 432 ; *State v. Yetzer*, 97 Iowa, 423.

These cases from Kansas are the only ones which have been called to our attention which seem to hold that personal knowledge of insolvency upon the part of the person charged must be established, that he must have received the deposit in person, and that ignorance of insolvency due to criminal negligence is not equivalent to knowledge.

We think the theory of the prosecution is sustained by the following among other cases in addition to those elsewhere cited in the opinion : *Meadowcroft v. The People, supra ; State v. Beach, supra ; State v. Shove*, 96 Wis. 1 ; *State v. Buck*, 120 Mo. 479 ; *Martin v. Webb*, 3 U. S. Sup. Ct. Rep. 428 ; *Baker v. State*, 54 Wis. 368 ; *Carr v. State*, 104 Ala. 4.

In *Baker v. State, supra*, it was said :

" A bank implies capital, and capital invites confidence. A man holding himself out as a banker or broker thereby gives public proclamation that he has money, and property readily convertible into money, in his possession and subject to his control, and for that reason he may be safely trusted. It requires no argument to show that such assurance is most inviting and influential with the mass of the people, especially with those unacquainted with the history and character of the man. With them the banker or broker is entrusted with money merely because he is a banker or broker, and hence supposed to have surplus capital as a standing guaranty of his agreements and his integrity. For an insolvent banker, company or corporation to continue the business of banking is to hold out assurances of responsibility and surplus capital where neither exists. To do so knowingly is to secure the confidence, and hence obtain the money, of the ignorant and unwary by an implied deception."

In *State v. Buck, supra,* it was held that as a bank officer it was defendant's business to know the financial condition of his bank at any and all times; and in *Meadowcroft v. The People, supra,* it is said:

"If one is a banker or person doing a banking business, and receives on deposit the money of his customer, it is to be presumed that he knows, at the time of receiving such deposit, whether or not he is solvent. At all events, as he holds himself out to the public and to his customers as being possessed of money and capital, and therefore to be safely trusted, it is his duty to know, and he is, under all ordinary circumstances, bound to know, that he is solvent; and it is criminal negligence for him not to know of his own insolvency."

We think this is as applicable to the president, as to the owner, of a private bank. Under this statute it is not necessary to show any specific intent upon the part of the defendant to injure another. If he does the act enjoined, with knowledge of the insolvency of the bank, no specific intent to harm need be shown. Such being the case, if the defendant has been criminally negligent in not informing himself as to the condition of the bank, that fact, coupled with the proof that he did the act prohibited, will be sufficient to warrant a conviction. 8 Ency. of Law (2d ed.), 285–289. The authorities there cited established the proposition that the negligent performance of a duty imposed by law or assumed by contract or wrongful act, may render the person guilty of such negligence criminally liable. Of course, *mere* negligence does not, but *criminal* negligence does, supply the place of intention, or guilty knowledge, under this act. Clark's Crim. Law, p. 43–48.

The question then is: May a banker, or an officer of a bank, exempt himself from criminal liability under the statute, by intentionally absenting himself from the bank and abstaining from participating in its management, and purposely neglecting to avail himself of means of information as to its financial condition, or by showing that if he had given

attention to its business, his lack of fitness, and unfamiliarity with banking methods, would not enable him to ascertain its true condition? The mere statement of the proposition, it seems to us, is its own refutation.

After a careful examination of the entire record, the writer of this opinion is thoroughly convinced that the offer of evidence made by the defendant and refused by the court amounts to nothing more than this: that the defendant was ignorant of the insolvency of the bank because he wilfully (wilfully in the sense of intentionally) neglected the means whereby he could or might have ascertained its condition, and paid no attention whatever to its business, though holding himself out as the president of a solvent institution, thereby encouraging persons to deal with it; or his lack of knowledge arose from the fact that his unfamiliarity with business methods was so pronounced that he could not have ascertained its true condition, had he made an examination into its affairs, but would have been obliged to depend (as he did) upon statements of its solvency made to him by those who had active management of its affairs. A person cannot, upon such a pretext, escape the natural and necessary consequences of his own voluntary acts which, in this case, clearly amount to criminal negligence.

In line with the other authorities cited in support of this conclusion is *Carr v. The State, supra,* which in all essential particulars is on all fours with the case at bar. The opinion contains an excellent statement of the law applicable to this case as to the duty of a bank officer to know its financial condition, and any excerpt would fail to disclose what only a careful reading of the entire opinion reveals. See, also, *State v. Cadwell,* 79 Iowa, 432, and *State v. Yetzer,* 97 Iowa, 423.

It may be true that in the management of a bank, the power of its president is less than that of the cashier. But we submit that the president cannot shield himself from criminal liability by casting the responsibility of failure and insolvency upon other officers who were more immediately

and directly contributory to it, by a plea of ignorance of the straits into which the institution has fallen, when that ignorance is due entirely to his criminal negligence in failing to acquaint himself with its affairs, or to his inability, natural or otherwise, to acquire knowledge had he exercised his faculties to that end.

The person who took the deposit in question was an employé of the bank, authorized by its officers to receive deposits into the bank in the ordinary course of business. Defendant, as president, either joined in conferring this authority, or, with knowledge of its existence, acquiesced in it. After the bank was insolvent, and after defendant knew it, or would have known it, had he not kept himself in ignorance of its financial condition by criminal negligence, he neither revoked the authority of the teller, nor did anything to discourage or put a stop to the taking of deposits by closing the doors, or giving notice that deposits would not be received. By such conduct he clearly assented to the reception of deposits. It was not essential to a conviction that he should assent to this particular deposit, or that he should have acquiesced in its reception after he obtained actual knowledge that it had been made. His recognition of the general authority of the teller to receive deposits, without taking any steps to prevent such action, after he knew, or, in law, is charged with knowledge of insolvency, is an assent to the reception of this deposit by his employé. *State v. Sattley,* *supra.*

My conclusion is that the offer by defendant to show his want of knowledge of the bank's insolvency was properly rejected, for the facts, if admitted to be true, furnish no excuse or justification whatever, in the light of his own admissions, for his not knowing, or attempting to ascertain, the financial condition of the bank; and that instruction No. 16, under the facts in evidence, taken, as it should be, with all the other instructions, was right. Therefore, I believe the judgment should be affirmed.

My associates, however, while agreeing with me as to the

general law of the case as hereinbefore declared, are of opinion that the trial court erred in rejecting the testimony offered by the defendant to show what steps he had taken to ascertain the solvency of the bank, and in giving instruction numbered 16, the latter part of which they interpret as laying down the doctrine that the president of the bank is practically an insurer of its solvency, which they hold is not the law. Their reasoning for this conclusion may thus be stated:

By instruction No. 16, the jury was, in effect, advised that so long as plaintiff in error retained the presidency of the bank, he was presumed to know, and it was his duty to know, its condition as to solvency or insolvency. This practically declared that at all times, and under all circumstances, he was conclusively presumed to know the financial condition of the bank, without respect to what steps he may have taken to ascertain this fact, which is not the true rule; for, in effect, it made him the absolute guarantor of the solvency of the bank. As an official of that institution, he was bound to exercise that reasonable degree of care and diligence in the management of the affairs of the bank which an ordinarily prudent person would do in like circumstances. This would impose upon him the duty of exercising reasonable care and diligence for the purpose of ascertaining and keeping himself advised regarding its financial condition. The knowledge on this subject which could have been thus obtained, he is presumed to possess.

As a witness in his own behalf, he was asked to state what the value of the assets of the bank were, at the time it was organized. He was also interrogated relative to the information he gained on the question of the solvency of the bank at the time he visited that institution. He was further interrogated regarding the statements of the officials who appear to have been in the active charge of the affairs of the bank relative to the representations they made to him regarding the value of the securities held by the bank, and if they stated that the assets were more than the liabilities. He was also asked what information he had with respect to the value of

loans and discounts of the bank. To each of these questions objections were interposed on behalf of the state, and sustained. That plaintiff in error had no knowledge regarding the financial condition of the bank at the time of its failure (which want of knowledge resulted from his own acts, in either failing to give proper attention to its management, or in intentionally neglecting to ascertain its condition), would not overcome the *prima facie* case made by the state. Whether or not, however, he had exercised that degree of care and diligence in keeping himself informed regarding its condition which an ordinarily prudent business man would have done, was a question of fact for the jury to determine. If he had, and by the exercise of this care obtained information which honestly led him to believe that the bank was solvent at the time of its failure, then he would not be guilty, although mistaken in his judgment.

The instruction given by the court ignored this rule. The evidence above noticed should have been admitted, as it tended to prove what steps the plaintiff in error had taken in the way of informing himself regarding the solvency of the bank.

It will thus be seen that, while the members of the court are in harmony as to the law governing the case, they differ in their interpretation of the instruction noted, and as to the character of the evidence offered and rejected. The majority holding there was error of the trial court in these respects, the judgment should be reversed and the cause remanded, and it is so ordered.

*Reversed.*