## ROBERTSON v. THE PEOPLE.

1. CONSTITUTIONAL LAW—LEGISLATIVE JOURNALS.

In determining whether an act of the general assembly was passed in
conformity with constitutional requirements, resort may be had to
the journals of the two houses to ascertain the steps taken by each
body in the passage of the act.

2. SAME.

The bill for the act under consideration, providing for the punishment
of a person receiving deposit in any bank with knowledge of its
insolvency (Mills' An. Stats., sec. 222), was introduced in the senate
and regularly passed, and while pending in the house was amended
by adding a section with the amendment regularly passed by that
body. Upon its return to the senate, that body refused to concur
in the house amendment, and, thereupon, a committee of conference
was appointed by the two houses which recommended that the house
recede from its amendment. Upon consideration of this report by
the house, the question being: "Shall the house recede from the
amendment and adopt the report of the committee?" the ayes
and nays were called and entered upon the journal, and a constitu-
tional majority having voted in the affirmative, the report was
adopted: *Held*, the house receded from its former vote only as to
the amendment, and that the bill, as it originally passed the senate,
was passed by the house in compliance with the requirements of
the constitution.

3. LAW OF THE LAND—LEGISLATIVE POWER—EVIDENCE.

The law of the land means a law binding upon every member of the
community under similar circumstances, and when the law applies
to all persons engaged in a certain occupation or business; and each
one is without distinction amenable to its provisions solely because
he pursues such occupation or business, it is not open to the charge
of depriving one of his rights without process of law.

The legislature has power to declare what shall be presumptive evidence
of any pertinent fact in criminal cases, and so to make the fact of
the failure of a bank within thirty days from the time of deposit
*prima facie* evidence of the banker's knowledge of the insolvency
of the bank at that time.

*Error to the District Court of Fremont County.*

THE plaintiff in error was convicted for receiving a deposit
of $254.70 from one James Taggert in The Chaffee County

Bank, of which he was at the time the owner and manager, knowing at the time that said bank was insolvent. The prosecution was had under the act entitled, " An Act to Provide for the Punishment of a Person Receiving Deposits in or Creating Indebtedness by any Bank or Banking Institution, with Knowledge of the Insolvency of such Bank or Banking Institution." Approved April 7, 1885, and found on page 50 of the Session Laws of 1885.

The information upon which the prosecution was based, omitting the formal parts, was as follows:

" That William E. Robertson, late of the county of Chaffee and state aforesaid, on to wit: the 30th day of June, in the year of our Lord one thousand, eight hundred and ninety-three, then and there being a banker and manager and cashier of a certain bank and banking institution doing banking business under the name and style of The Chaffee County Bank, in the county of Chaffee and state of Colorado, he the said William E. Robertson, being the only person known to the district attorney operating and owning the said bank and banking institution, did then and there fraudulently, knowingly and feloniously receive and assent to the reception of a certain deposit of money, to wit: the sum of two hundred and fifty-four dollars and seventy cents in money, of the value of two hundred and fifty-four dollars and seventy cents, of the personal property and moneys of one James Taggert, by said banker and in said bank and banking institution, the said banker, bank and banking institution then and there being and for a long time prior thereto insolvent, and that he the said William E. Robertson, at the time and before the reception of the deposit, had full knowledge of the fact that the said banker, bank and banking institution were insolvent, and so in manner and form and by the means aforesaid he, the said William E. Robertson, did then and there feloniously steal, take and carry away the said two hundred and fifty-four dollars and seventy cents in money, of the value of two hundred and fifty-four dollars and seventy cents, of the personal property and moneys of the said James Taggert, con-

trary to the form of the statute in such case made and provided, and against the peace and dignity of the same people of the state of Colorado."

The sufficiency of the information in matter of form is not questioned, but a motion to quash was interposed upon the following grounds:

" That the facts alleged in said information do not constitute any criminal offense at common law or under the statutes of the state of Colorado.

" That the statute upon which said information is based is unconstitutional and void in this, to wit: (1) Said statute undertakes to make larceny an act which the legislature had no power to make larceny as defined and limited by the common law and the statute of the state of Colorado.

" (2) Said statute is special and class legislation and violates subdivision twenty-four of section 25 of article V of the constitution of the state of Colorado, which reads: ' In all other cases where a general law can be made applicable, no special law shall be enacted.'

" (3) Said statute is in violation of section 3 of the Bill of Rights of the constitution of the state of Colorado, which reads: ' That all persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property, and of seeking and obtaining their safety and happiness.'

" (4) Said statute is in violation of section 12 of said Bill of Rights, which reads : ' No person shall be imprisoned for debt unless * * * where there is a strong presumption of fraud.'

" (5) Said statute is in violation of section 25 of said Bill of Rights, which reads: ' That no person shall be deprived of life, liberty or property, without due process of law.'

" (6) Said statute is in violation of article 14 of amendments to the constitution of the United States, which declares (section 1): ' All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are

citizens of the United States, and of the state wherein they reside.

" 'No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law.'

" (7) Said statute is unconstitutional and void because in its present form, or in the form in which it was signed by the executive, it never had a third reading in the house of representatives of the state of Colorado, and in said form was never placed upon a third reading and final passage in the house of representatives as appears by the journal of said house of representatives for the year A. D. 1885."

This motion was overruled and the same questions were again presented upon an objection to the introduction of any evidence under the information upon the trial; and again, by a motion for new trial and in arrest of judgment. Trial resulted in conviction, and the plaintiff in error was sentenced to confinement in the penitentiary for the term of one year.

To reverse this sentence and judgment plaintiff in error brings the case here upon error.

Messrs. WALDO & DAWSON and Mr. THEODORE MARTIN, for plaintiff in error.

THE ATTORNEY GENERAL and Mr. H. T. SALE, for the People.

MR. JUSTICE GODDARD delivered the opinion of the court.

It is urged upon this review that the court below erred in overruling the motion to quash the information and the motion in arrest of judgment, for the reasons therein assigned, to wit, that the act in question was never enacted in accordance with the requirements of the constitution of this state

and, *second*, that if constitutionally enacted, it is void by reason of conflict with the constitutional provisions set forth. In the determination of the first of these objections, we agree with counsel for plaintiff in error, that resort may be had to the journals of the two houses to ascertain the steps that were taken by each of these bodies in the passage of the act, and thereby determine whether it was passed in conformity to the constitutional requirements. This doctrine was announced as the law in this state *In re Roberts*, 5 Colo. 525, and again recognized in the case of *Nesbit v. The People*, 19 Colo. 441.

An examination of the journals of the fifth general assembly discloses that the bill for the act was introduced in the senate and regularly passed, and while pending in the house the same was amended by adding the following section :

"It shall be the duty of each and every bank, banking association, firm and individual doing business as bankers in this state, by whom deposits of money, or its equivalent, are or shall be received to publish in a newspaper having a general circulation in the county in which such business is or shall be done, on the first days of January, April, July and October of each and every year, a full statement of the assets and liabilities of such bank, banking association, firm or individual, showing the amount of capital invested, the amount of deposits, and all other items that will tend to show the true condition of such banking business. The correctness of such statement shall be attested by the chief managing officer of the business of such bank or banker." And with this amendment was regularly passed by the house, the ayes and nays being called and entered upon the journal. Upon its return to the senate, the senate refused to concur in the house amendment, and thereupon a committee of conference was appointed by the two houses. This committee recommended that the house recede from its amendment. Upon consideration of this report by the house, the question being, "Shall the house recede from the amendment and adopt the report of the committee?" the ayes and nays were had and

entered upon the journal, and a constitutional majority voting in the affirmative, the report was adopted.

It is insisted by counsel for plaintiff in error that although the house passed the bill as amended, by a constitutional majority, and afterwards receded from its amendment by a like vote, that by its failure thereafter to repass the bill there was a noncompliance with section 22, article 5 of the constitution, which provides, *inter alia*, that "No bill shall become a law except by vote of a majority of all the members elected to each house; nor unless on its final passage the vote be taken by ayes and nays, and the names of those voting be entered on the journal."

The primary purpose of this provision is to secure the approval of a bill by a majority of the members elected to each house, as a condition to its becoming a law; and when the procedure had in the respective houses has accomplished that purpose, and a bill has so received such approval, the requirements of the provision have been complied with. As shown by its journal, the house passed the bill as it came from the senate, with a section added, in strict conformity to the constitutional requirement, by a vote thereon taken by ayes and nays, and entered on the journal, thereby approving the bill, including the amendment. Thereafter, by an aye and nay vote entered on the journal, deliberately receded from its amendment, leaving the bill intact as it came from the senate, thereby evidencing its approval of the same without the amendment. We think by the latter vote, the house clearly manifested its intention to recede from its former vote only as to the amendment, and leave it, in so far as it was an approval of the first section of the bill, undisturbed. The legislative will, therefore, having been expressed in the manner provided by the constitution in favor of the bill as it originally passed in the senate, the first ground of objection is not well taken. Counsel cites the case of *The People v. De Wolfe*, 62 Ill. 353, in support of his contention; but from a careful reading of that decision, it will be seen that the

reasoning of the court will be found to sustain the view we have taken.

The facts of the case are very like the facts in this case. The bill for the act under consideration therein originated in the house, was amended in the senate, and the house refusing to concur in the senate amendment, the senate undertook to recede from its amendment, and the vote thereon was 23 for and 16 against receding therefrom. The number of senators elected to and composing the senate being 50, it was therefore necessary for at least 26 of its members to concur in the final passage of a bill; and the court held, that it appearing on the face of the journal that the amendment was not receded from by a constitutional majority, such vote was inoperative. In holding the act invalid the court say :

" It had passed the bill only as amended. It does not follow that the bill stripped of the amendment did receive, or would have received the assent of the constitutional majority of the senate. * * * The question is, to what did a constitutional majority of the senate give their assent ? "

It is fairly inferable, from the language of the court used, that if a constitutional majority had voted for receding from the amendment, the bill would have been constitutionally passed. That such was the effect of that decision, we refer to the language used by Chief Justice Walker in commenting upon it in his dissenting opinion, in the case of The People v. Loowenthal, 93 Ill. 191. He says:

" In that case the bill originated in and passed one house, and was amended in the other, and being returned to the house in which it originated, that house refused to concur, and the bill was returned to the house which made the amendment, and on a motion to recede, the motion was adopted by a majority of a quorum, but not by a majority of the members elect, and it was held that the bill was not finally passed by the constitutional majority, and that it was void. In that case we see that it was held that a majority of all the members elect was essential to strike out the amend-

ment, or that receding from the amendment was a final passage of the bill."

In the case of the *Division of Howard Co.*, 15 Kan. 194, identical in its facts with the one at bar, with the exception that the bill originated in the house instead of the senate, in answer to the same objection urged against the validity of the act, that court say:

" We think that the provision of the constitution requiring that ' The yeas and nays shall be taken, and entered immediately on the journal, upon the final passage of every bill or joint resolution' (art. 2, sec. 10), was sufficiently complied with. · It would of course ·have been more formal if the senate, after receding from its own amendments had again put the bill upon its final passage, and passed the bill without the amendments, as it had done with the amendments. But the manner in which this bill was passed has always been acted upon; and if we should now hold it insufficient we should probably invalidate a very large proportion of all the laws that have ever been enacted in Kansas."

These are the only cases to which our attention has been called, wherein the adjudication of the court was upon facts similar to those in the case before us, but several cases involving the validity of acts passed in like manner, but incorrectly enrolled, we find support the view we have announced. *Smithee v. Campbell Land Co.*, 41 Ark. 471; *Jones v. Hutchinson*, 43 Ala. 721; *Nelson v. Haywood Co.*, 91 Tenn. 596; *People v. Supervisors of Chenango*, 8 N. Y. 317; *State v. Hagood*, 13 S. C. 46.

The second contention is that the subject-matter of the act is violative of several constitutional provisions of this state, and especially of sections 12 and 25 of the Bill of Rights, which guarantee that "no person shall be deprived of life, liberty or property without due process of law;" and that "no person shall be imprisoned for debt unless * * * where there is a strong presumption of fraud;" and also of article 14 of the amendment of the constitution of the United States, which declares that "no state shall make or enforce any law

which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law."

The argument is that the act in question, by making the inhibited acts a crime only as to bankers, is class legislation, and renders them amenable to punishment for acts that may be done by others with impunity, and hence deprives them of their liberty without due process of law, or without the sanction of the law of the land. We think this claim is fallacious, and that the act is not within the class of legislation inhibited by these provisions of the constitution. It is in a sense class legislation, but not in the invidious sense that renders it obnoxious to the objections urged here. The law of the land is said to mean a law binding upon every member of the community under similar circumstances. *Wally's Heirs v. Kennedy*, 2 Yerger, 554. And when the law applies to all persons engaged in a certain occupation or business, and each one is without distinction amenable to its provisions solely because he pursues such occupation or business, it is then " binding upon all persons of the community under similar circumstances." Such legislation has uniformly been upheld. Judge Cooley, speaking upon this subject, at pages 482–3 of his work on Constitutional Limitations, says :

" The legislature may also deem it desirable to prescribe peculiar rules for the several occupations, and to establish distinctions in the rights, obligations, duties and capacities of citizens. The business of common carriers, for instance, or of bankers, may require special statutory regulations for the general benefit, and it may be matter of public policy to give laborers in one business a specific lien for their wages, when it would be impracticable or impolitic to do the same for persons engaged in some other employments. If the laws be otherwise unobjectionable, all that can be required in these cases is, that they be general in their application to the class or locality to which they apply ; and they are then public in

character, and of their propriety and policy the legislature must judge."

In the case of *Dent v. West Virginia*, 129 U. S. 124, the supreme court of the United States say: "Legislation is not open to the charge of depriving one of his rights without due process of law, if it be general in its operation upon the subjects to which it relates." And in the case of the *State v. Loomis*, 115 Mo. 307, Judge Black, while holding the law then under consideration to be unconstitutional, as violative of the constitutional guaranty of due process of law, says: "There is no doubt but many of our legislative enactments operate upon classes of individuals only, and they are not invalid because they so operate, so long as the classification is reasonable and not arbitrary. Thus it is perfectly competent to legislate concerning married women, minors, insane persons, bankers, common carriers and the like." The cases in which legislation of this character has been upheld are too numerous to permit of special mention.

Upon a careful examination of the numerous cases cited by counsel for plaintiff in error in his elaborate and exhaustive brief, we find no case that questions the right of the legislature in the exercise of the police power to regulate or prohibit the business of banking. On the other hand, we find several well reasoned cases that uphold statutes of the character under consideration as being clearly within the legislative discretion, and a proper exercise of the police power of the state. In the case of *Youngblood v. Birmingham Trust & Savings Co.*, 95 Ala. 521, a statute that made it a misdemeanor for a banker to discount any note, bill of exchange or draft at a higher rate of interest than eight per cent per annum, was upheld as a constitutional enactment; and the case of *Baker v. The State*, 54 Wis. 368, a statute very similar in its terms and of the same purport and effect as the one at bar, was held to be valid, and not obnoxious to the constitutional provisions relied on by plaintiff in error.

Judge Cassoday, speaking for the court, says: "The manifest object of the statute in question was to suppress the

business of banking or brokerage by any insolvent person, company or corporation. It therefore inflicts punishment upon persons so engaged, knowing the fact. * * * A bank implies capital, and capital invites confidence. A man holding himself out as a banker * * * thereby gives public proclamation that he has money, and property readily convertible into money, in his possession and subject to his control, and for that reason he may be safely trusted. It requires no argument to show that such assurance is most inviting and influential with the mass of the people, especially with those unacquainted with the history and character of the man. With them the banker * * * is entrusted with money merely because he is a banker * * * and hence supposed to have surplus capital as a standing guaranty of his agreements and his integrity. For an insolvent banker, company or corporation to continue the business of banking is to hold out assurances of responsibility and surplus capital where neither exists. To do so knowingly is to secure the confidence, and hence obtain the money, of the ignorant and unwary by an implied deception."

The learned judge also disposes of the objection that the act is in violation of section 12 of the Bill of Rights, which reads : "No person shall be imprisoned for debt unless * * * where there is a strong presumption of fraud," in the following language: "The imprisonment here is not for any debt * * * but upon a charge of an act made a misdemeanor by the statute, to wit, the receiving of money on deposit as a banker by one knowing himself or such bank to be insolvent. The case manifestly does not come within the prohibition of that section."

The further objection that the act in question, by making the fact of failure of the bank within thirty days from the time of the deposit *prima facie* evidence of knowledge on the part of the banker that the bank was insolvent at the time of the reception of the deposit, is also untenable. While there is a conflict in the decisions upon this subject, the weight of authority sustains the power of the legislature

to declare even in criminal cases what shall be presumptive evidence of any pertinent fact. We think the rule with its limitations is correctly announced in *The Board of Com'rs of Excise v. Merchant*, 103 N. Y. 148, as follows:

" The general power of the legislature to prescribe rules of evidence and methods of proof is undoubted. While the power has its constitutional limitations, it is not easy to define precisely what they are. A law which would practically shut out the evidence of a party and thus deny him the opportunity for a trial would substantially deprive him of due process of law. It would not be possible to uphold a law which made an act *prima facie* evidence of crime over which the party charged had no control and with which he had no connection, or which made that *prima facie* evidence of crime which had no relation to a criminal act and no tendency whatever by itself to prove a criminal act. But so long as the legislature in prescribing rules of evidence, in either civil or criminal cases, leaves a party a fair opportunity to make his defense and to submit all the facts to the jury to be weighed by them, upon evidence legitimately bearing upon them, it is difficult to perceive how its acts can be assailed upon constitutional grounds." Also, see *People v. Cannon*, 139 N. Y. 32.

In the case of the *State v. Buck*, 25 S. W. Rep. 577, the court, in passing upon the precise question now under consideration, says: " The act which makes the failure of any private bank *prima facie* evidence of the knowledge on the part of the owner, agent, or manager of any private bank or banking institution doing business in this state, that the bank was in failing circumstances or insolvent at the time of receiving any deposit, has some relation to, and furnishes some evidence of, the alleged offense. To make receiving money on deposit, under such circumstances, *prima facie* evidence of knowledge on the part of the owner of the bank that it was then in failing circumstances or insolvent, violates no constitutional guaranty." *Dodge v. Mastin*, 5 McCrary, 404;

*State v. Kingsley*, 108 Mo. 133; Black on Intoxicating Liquors, sec. 60.

Upon a full investigation and consideration of the questions urged by plaintiff in error, we can perceive no valid objection to the constitutionality of the act under which this prosecution and conviction was had, either in the manner in which it was passed, or in its subject-matter; and no other reasons affecting the validity of the conviction and sentence appearing, the judgment of the court below must be affirmed.

*Affirmed.*

Messrs. WALDO & DAWSON and Mr. THEODORE MARTIN, for plaintiff in error.

THE ATTORNEY GENERAL and Mr. H. T. SALE, for the People.