## No. 13,659.

### WOOLSEY *v.* THE PEOPLE.
(53 P. [2d] 596)

Decided November 25, 1935.  Rehearing denied January 13, 1936.

Mr. THOMAS H. GIBSON, for plaintiff in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. WALTER F. SCHERER, Assistant, for the people.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

PLAINTIFF in error, Woolsey, defendant in the trial court, an officer and director of the Union State Bank of Yuma, Colorado, was prosecuted under a charge of assenting to the reception of a deposit in said bank while it was insolvent, with full knowledge of such insolvency.

The information, so far as here material, and omitting the formal parts, charges as follows: "That Fred H. Cole, Sr., Alfred Itten, H. E. Woolsey, M. I. Stebbins and M. M. Dickson and each of them, late of the County of Yuma and State of Colorado, on or about the 20th day of October in the year of our Lord one thousand nine hundred and thirty-one at and within the County and State aforesaid, being then and there officers and directors of The Union State Bank of Yuma, Colorado, a bank duly incorporated, organized and existing under and by virtue of the laws of the State of Colorado and carrying on a general banking business in the Town of Yuma in the County of Yuma and State of Colorado, did then and there fraudulently, knowingly and feloniously receive and assent to the reception of a certain deposit of money, to-wit, the sum of $21.79 in money, of the value of $21.79 and a certain deposit in bank checks, to-wit: [here follows a detailed list of bank checks and amounts totalling $37.85] of the personal property and moneys of the Equity Cooperative Oil Company, a corporation, duly incorporated, organized and existing under the laws of the

State of Colorado, by the said bank; the said The Union State Bank of Yuma, Colorado, a banking corporation, being then and there insolvent and that they, the said Fred H. Cole, Sr., Alfred Itten, H. E. Woolsey, M. I. Stebbins, M. M. Dickson, and each of them, at the time and before the reception of the deposit had full knowledge of the fact that the said The Union State Bank of Yuma, Colorado, a banking corporation, was insolvent; and so the said Fred H. Cole, Sr., Alfred Itten, H. E. Woolsey, M. I. Stebbins and M. M. Dickson and each of them in the manner and form aforesaid then and there did wilfully, unlawfully and feloniously steal, take and carry away the money and other valuable things of the said The Equity Cooperative Oil Company, a corporation, of the total value of $59.64 as aforesaid, contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the same People of the State of Colorado.''

The statutes under which this prosecution was brought are: Section 2676, C. L. 1921, being section 40, chapter 44, Session Laws 1913, which is as follows: ''No bank shall receive any deposit when it is insolvent, nor shall any officer, director or employe of any bank knowingly permit the same. An action may be had to recover any deposits received in violation hereof, and the bank and all officers, directors and employes thereof knowingly permitting the same, and their personal representatives, may be joined as defendants and joint and several judgment be recovered against them. No officer, director or employe of any bank shall receive or assent to the reception of any deposit of money or other valuable thing by such bank or create or assent to the creation of any debt or liability by such bank after he shall have had knowledge of the fact that such bank is insolvent. Upon the trial of any person charged with an offense under this Section, evidence of the failure of such bank at any time within thirty days after the reception of such deposit or the creation of such indebtedness, shall be received as

prima facie evidence of knowledge on the part of the person charged, that such bank was insolvent at the time of the reception of such deposit or the creation of such indebtedness''; and section 2740, C. L. 1921, being section 85, chapter 44, Session Laws of 1913, reading: ''Any person who shall wilfully or knowingly fail to perform any act required, and as required by sections 22, 23, 40, 42, 58 and 63 hereof, or who shall commit any act in violation of said sections, shall be guilty of a felony, and upon conviction shall be punished by a fine of not to exceed two thousand dollars, or by imprisonment in the penitentiary for a term not to exceed twenty years, or by both such fine and imprisonment.''

The foregoing superseded similar sections to be found in Session Laws 1885 at page 50, and revised statutes 1908, §281, which were repealed by the 1913 act. The act of 1885 was substantially the same as the act of 1913, except that it stated that one who violated its provisions ''shall be deemed guilty of larceny and on conviction thereof be punished by imprisonment in the penitentiary,'' etc., while the later act provides that the doing of the same things inhibited by the former law shall constitute a felony to be punished as in the act provided.

The form of information used in the case under consideration is substantially the same as that used in the cases of *Robertson v. People,* 20 Colo. 279, 38 Pac. 326, and *McClure v. People,* 27 Colo. 358, 61 Pac. 612. Both of these cases were prosecuted under the 1885 act.

The defendant in the present case contends that the information on which he was tried charges him with larceny, and that it was error for the court to give instruction No. 1, because that instruction failed to state that ''in the manner and form aforesaid'' a larceny was committed. The instruction correctly states the crime charged in the information and sets out the essential elements, proof of which was necessary to establish defendant's guilt. The information in this case is the identical

information passed upon by this court in the case of *Cole v. People,* 92 Colo. 145, 18 P. (2d) 470. Cole was a co-defendant, tried separately under the same information which is now before us for consideration. The information was attacked in the Cole case on the ground that it charged two separate and distinct crimes. In disposing of that objection the court, in construing the information, used words so pertinent to the questions here involved that we deem it unnecessary to do more than quote the former holding of our court in that case. On this point Mr. Justice Butler used the following language: "Another contention is that the information 'is too uncertain, inconsistent and repugnant to inform the defendants of the nature and cause of the accusation or to support a judgment.' In support of such contention, it is said that the information charges two separate and distinct crimes: (1) Receiving a deposit with knowledge of the bank's insolvency, which is made a crime by the act of 1913, supra; and (2) larceny, which is not mentioned in that act.

"The information follows the one involved in *Robertson v. People,* 20 Colo. 279, 38 Pac. 326. That case was decided under Session Laws of 1885, page 50, which provided that an officer, etc., of a bank who should receive, etc., a deposit, knowing the bank to be insolvent, should be deemed guilty of larceny. In the act of 1913, supra, such conduct is made a substantive crime; there is no reference to larceny. The information charges that the defendants, being officers, etc., of the Union State Bank of Yuma, knowing the bank to be insolvent, did feloniously, etc., receive, and assent to the reception of, a certain deposit of money and bank checks, 'and so,' the said defendants, 'in the manner and form aforesaid,' did 'then and there' feloniously, etc., 'steal, take and carry away' the money and other valuable things of the depositor. The information does not charge two crimes. It correctly charges conduct that the act of 1913 declares

to be a crime, and then mistakenly alleges, in substance, that by so doing the defendants committed larceny. The legal conclusion that such conduct constitutes larceny is erroneous, of course, but the allegation did not—indeed, it could not—mislead the defendants. The allegation has no proper place in the information, but its insertion did not tend to prejudice the substantial rights of the defendants on the merits, and therefore is no ground for the reversal of the judgment. C. L. §7103. The trial court properly rejected it as surplusage.

"The situation discussed in paragraph 3 is made the basis of objection to certain of the instructions and to the verdict of the jury. The views expressed in paragraph 3 sufficiently answer such objection. The objection is without merit."

A rehearing in the Cole case was denied January 30, 1933, and the trial of the case here under consideration was begun April 18, 1934, more than a year after that decision. The chief counsel in the Cole case was the leading counsel for defendant in the trial of this case. The decision in the Cole case was available in the construction of identically the same information under which the defendant in this case was convicted. That decision informed the defendant of the constituent elements of the crime with which he was charged, and the issues he had to meet in order to refute that charge. Neither the defendant nor his counsel could possibly have been misled in any respect as to the law here applicable in the light of the decision in the Cole case. The information charged the crime defined by statute and not the crime of larceny.

The trial of this cause consumed seven days and the record is voluminous. That portion of the testimony which is abstracted is a very inconsiderable part of the whole record, but even from the abstract it appears that there was competent evidence to establish the facts that a deposit was made in the bank October 20, 1931; that this deposit was received by Mabel Olsen, a bookkeeper and

teller in the bank; that the defendant Woolsey was at the time a director, and the cashier in active charge of the bank; that Mabel Olsen took her general instructions from him; that the bank was insolvent; and that it closed its doors October 20, 1931, the same day the deposit was received. There being competent evidence of the foregoing facts, the jury was entitled to find, and doubtless did find, the existence of those facts. In such facts, together with the assent of defendant to the reception of the deposit, we have all the elements of the statutory crime.

The defendant contends that there is no evidence that he assented to the reception of the deposit. There is evidence that Mabel Olsen, who received the deposit, was a teller and bookkeeper in the bank and had been such for two years. A bank teller is one who receives deposits and pays out money on checks. The jury was at liberty to construe the word "teller" as used in the testimony in its commonly accepted sense. The evidence shows that the cashier was in active charge of the bank and even though he might have been temporarily absent the jury may well have found, and doubtless did find, from the evidence, that the defendant knew that the teller would continue to receive deposits during his absence in the usual course of business. There was evidence of the insolvency of the bank, and of the teller's knowledge of such insolvency, in addition to the fact of the bank's failure within thirty days after the deposit was made, in fact, on the very day of the deposit. The evidence discloses that for ten days before the bank closed, defendant had given instructions that certain cash letters were to be withheld, no remittance made for them in the usual course of business, and that some of these letters were on hand when the bank closed. In other words, the evidence established that the bank, by holding up these letters, was not meeting the demands of its creditors in the usual course of business, and had not met them when it closed. Under such circumstances, the fail-

ure to instruct the teller not to receive deposits or to prevent prospective depositors from putting their money into an insolvent institution—and the record discloses no such instructions—is at least circumstantial evidence which the jury was entitled to consider, and if satisfied of its sufficiency, to find, as it did, that the defendant assented or acquiesced in the reception of the deposit by the bank teller in the usual course of business. If the defendant had received the deposit personally, there could be no question of his assent under the circumstances. When an officer and director of a bank with authority to instruct the employees as to what they should and should not do remains silent, it is mere sophistry to say that he did not assent to the reception of deposits, even when made in his absence, when as a reasonable man he knew they would be received by the employees if presented. Under such circumstances, the cashier is morally and legally as culpable as though he himself had performed the act of receiving the money, which necessarily would have involved his assent to its reception. The following words from the opinion of Mr. Justice Campbell in *McClure v. People,* 27 Colo. 358, 374, 61 Pac. 612, are applicable to, and decisive of, the question of assent here involved: ''The person who took the deposit in question was an employe of the bank, authorized by its officers to receive deposits into the bank in the ordinary course of business. Defendant, as president, either joined in conferring this authority, or, with knowledge of its existence, acquiesced in it. After the bank was insolvent, and after defendant knew it, or would have known it, had he not kept himself in ignorance of its financial condition by criminal negligence, he neither revoked the authority of the teller, nor did anything to discourage or put a stop to the taking of deposits by closing the doors, or giving notice that deposits would not be received. By such conduct he clearly assented to the reception of deposits. It was not essential to a conviction

that he should assent to this particular deposit, or that he should have acquiesced in its reception after he obtained actual knowledge that it had been made. His recognition of the general authority of the teller to receive deposits, without taking any steps to prevent such action, after he knew, or, in law, is charged with knowledge of insolvency, is an assent to the reception of this deposit by his employe."

Counsel for defendant says: "The question is: Is the receipt of a deposit by an employee of a bank the act of another officer having authority over the employee, or is it simply the act of the bank, for which the employee acts in receiving the deposit?" We think this question is answered by the second paragraph of section 40, chapter 44, S. L. 1913, which provides that, "No officer, director or employe of any bank shall receive or assent to the reception of any deposit of money or other valuable thing by such bank * * * after he shall have had knowledge of the fact that such bank is insolvent." The test is not whether the receipt of the deposit is by the bank, by the employee or by an officer having authority over the employee, nor is the test whether the party receiving or assenting has authority to close the bank. The conduct inhibited by the law is the receiving of a deposit or acquiescing in the receipt of a deposit with guilty knowledge that the depositor is placing his money in an insolvent institution. The first portion of said section 40, dealing with the civil liability of officers, directors and employees says that they shall be liable civilly if they *knowingly permit* deposits to be made in an insolvent institution. We know of no law denying the right to refuse a deposit, nor is there any reason why an officer or employee with knowledge of insolvency should not refuse to receive a deposit, neither is there any law prohibiting, and certainly no reason why, an officer in charge should not instruct an employee not to receive a deposit, even though the bank is open, for any person, whether he be officer or

employee, has a right to refuse to do an act which the laws of the state have denominated a felony, though he may not have authority to close the institution. An officer or employee cannot escape liability by saying that the *bank* received the deposit. The statute is aimed at the agent who, with guilty knowledge, receives or assents to the reception of a deposit by the principal, an inanimate corporation.

We have examined the instructions of the trial court and considered the objections of counsel thereto. We think the instructions fairly submitted the case to the jury, and that the objections are without merit.

Defendant's counsel says that his (counsel's) physical condition was such during the trial that, in his opinion, his client did not receive a fair trial. This was not called to the attention of the court until after the motion for a new trial was filed and then on an application to amend the motion by presenting it as an additional ground of error. When the case was called for trial the defendant interposed no objection. The disposition of this matter rested in the sound discretion of the trial court and the record discloses that it did not abuse such discretion.

The judgment is affirmed.

MR. CHIEF JUSTICE BUTLER, MR. JUSTICE CAMPBELL and MR. JUSTICE BURKE concur.

MR. JUSTICE HILLIARD, MR. JUSTICE BOUCK and MR. JUSTICE HOLLAND dissent.

MR. CHIEF JUSTICE BUTLER, concurring.

Several of the instructions given by the court do not, in all respects, state the law as I understand it to be; and if the court's attention had been called to the situation at the trial and the court had refused to change the instructions, I would be inclined to vote for a reversal of the judgment.

Our rule 7 provides: "The court shall afford respective counsel a reasonable time and opportunity to examine proposed instructions, whether requested or to be given by the court of its own motion, and to prepare and present specific objections thereto before such instructions are given to the jury. On motion for new trial, or on review by the Supreme Court, only the grounds so specified shall be considered."

We have refused repeatedly to consider assignments of error based on instructions given, when the objections thereto were not made in apt time so as to give the trial court an opportunity to correct the instructions, if erroneous. See, for example, *Dillulo v. People,* 56 Colo. 339, 341, 138 Pac. 33; *Modern Woodmen v. White,* 70 Colo. 207, 199 Pac. 965; *Sarno v. People,* 74 Colo. 528, 223 Pac. 41; *Koontz v. People,* 82 Colo. 589, 263 Pac. 19.

We have departed from that practice in certain extreme cases; but from an examination of the record, I am satisfied that such departure would not be justified in the present case. At the trial the defendant was represented by two attorneys, one of them being an experienced lawyer of long standing at the bar. The information was filed April 19, 1932, and the trial was commenced April 18, 1934. One of the defendant's attorneys who participated in the trial had tried a similar case which came to this court and was decided here more than a year before the present case was tried. See *Cole v. People,* 92 Colo. 145, 18 P. (2d) 470. Counsel had abundant opportunity to advise themselves of the facts in the present case and the law applicable thereto. The instructions, before they were given, were shown to counsel, and counsel were asked by the court whether there were any objections thereto, and they made no objection to the instructions.

In the circumstances, the defendant is not entitled to a consideration of his assignments of error based upon the instructions.

The only other assignments are that the evidence was insufficient to sustain the verdict or the judgment, and that the judgment was without and beyond the jurisdiction of the trial court. These assignments are without merit.

In my opinion, the judgment is properly affirmed.

Mr. Justice Holland, dissenting.

From the majority opinion herein I respectfully dissent.

Reference will be herein made to the parties as the people and Woolsey, as they were aligned in the trial court, where the defendant in error, the people, prosecuted and convicted Woolsey as an officer and director of an insolvent bank under an information charging that on October 20, 1931, he did fraudulently, knowingly and feloniously receive and assent to the reception of a certain deposit of money, of the personal property and moneys of the Equity Cooperative Oil Company, by said bank, the Union State Bank of Yuma, Colorado, a banking corporation, being then and there insolvent, and that he at the time and before the reception of the deposit, had full knowledge that the bank was insolvent, and so he, in the manner and form aforesaid, then and there did willfully, unlawfully and feloniously steal, take and carry away the money and other valuable things of the Equity Cooperative Oil Company, of the total value of $59.64 contrary, etc. A year later, and on April 19, 1932, this information was filed, defendant arraigned April 18, 1933, and trial began April 18, 1934. On a verdict of guilty, after the overruling of a motion for new trial, Woolsey was sentenced to serve from five to seven years in the state penitentiary, and he prosecutes error to reverse the judgment of conviction.

The testimony on behalf of the people was brief and established only the following material points: That the deposit was made October 20, 1931; that it was received

by Mabel Olsen, bookkeeper and teller; that on that day Woolsey was in Denver; that Woolsey was at that time a director and cashier of the bank; that in the opinion of several witnesses, the bank was then insolvent; that Mabel Olsen took her general directions and orders from Woolsey, who was in active charge of the bank; that the bank was closed October 20, 1931. Woolsey entered a plea of "not guilty," and contended that the bank was not insolvent, also that the closing of the bank was due to a "silent run" due to the depressed conditions. He did not testify in his own behalf.

It is undisputed that the deposit was received by Mabel Olsen, in the absence of Woolsey, and the record is silent as to any attempt at proof by the people, of any *assent* to the reception of the deposit, on the part of Woolsey, or to show any authority in him to close the bank, or to revoke the authority of Mabel Olsen, as bookkeeper and teller, to receive deposits. The people seemed content to try the case on the theory expressed at the trial by Mr. Chutkow, appearing as special prosecutor as follows: "There are just three issues that can be tendered in this case, first, whether or not a deposit was made; second, whether the bank at the time was insolvent; and, third, the knowledge of the defendant. There cannot be any other issues in this particular case because those are the elements of the crime defined."

In face of an information, charging larceny, the above theory of the case was adopted by the trial court, and in my opinion, submitted to the jury under erroneous instructions. Before a conviction can stand, the charge contained in the information must be sustained. The gist of the information was, that he did wilfully, unlawfully and feloniously steal, take and carry away the money and other valuable things, etc. This charge was not sustained, neither was there any attempt to prove it. Woolsey, upon a "not guilty" plea fixed the issue, and submitted to trial upon the charge as laid. Depriving

him of his constitutional rights, he was tried and convicted of a separate and distinct crime, by establishing what was erroneously thought to be a prima facie case, apparently under section 2676, C. L. 1921 (section 40, chapter 44, S. L. 1913), which is as follows:

"No bank shall receive any deposit when it is insolvent, nor shall any officer, director or employe of any bank knowingly permit the same. An action may be had to recover any deposits received in violation hereof, and the bank and all officers, directors and employes thereof knowingly permitting the same, and their personal representatives, may be joined as defendants, and joint and several judgment be recovered against them.

"No officer, director or employe of any bank shall receive or assent to the reception of any deposit of money or other valuable thing by such bank or create or assent to the creation of any debt or liability by such bank after he shall have had knowledge of the fact that such bank is insolvent. Upon the trial of any person charged with an offense under this section, evidence of the failure of such bank at any time within thirty days after the reception of such deposit or the creation of such indebtedness, shall be received as prima facie evidence of knowledge on the part of the person charged, that such bank was insolvent at the time of the reception of such deposit or the creation of such indebtedness." And section 2740, C. L. 1921, being section 85, chapter 44, S. L. 1913: "Any person who shall wilfully or knowingly fail to perform any act required, and as required by sections 22, 23, 40, 42, 58 and 63 hereof, or who shall commit any act in violation of said sections, shall be guilty of a felony, and upon conviction shall be punished by a fine of not to exceed two thousand dollars, or by imprisonment in the penitentiary for a term not to exceed twenty years, or by both such fine and imprisonment."

The trial and conviction for having committed an offense, under the statute quoted, being another and differ-

ent offense than that charged in the information, is void and beyond the jurisdiction of the trial court. To say that the defendant did "feloniously steal and carry away" the money, a positive charge of theft, is mere uninjurious surplusage, is in effect saying that "in addition to violating a statute regulating the operation of a bank, you are also a thief." This surely is not a recommendation commending defendant to the jury who had his liberty in its hands.

It is apparent from the instructions in this case that the prosecution and the trial court erroneously relied solely upon a so-called prima facie case, as is evidenced by instruction No. 2, which is as follows:

"In this case the People must establish beyond a reasonable doubt and from all of the evidence in the case the following elements:

"1. That a deposit of $59.64 was made in The Union State Bank of Yuma, Colorado, a banking corporation, on or about the 20th day of October, 1931.

"2. That at the time the said deposit was made The Union State Bank of Yuma, Colorado, was insolvent.

"3. That at that time the defendants had knowledge of the insolvency of said bank."

This instruction was lacking in an additional element necessary to be established before a conviction could be sustained. The defendant is charged with having received and assented to the reception of a bank deposit. The instruction given is equivalent to saying to the jury that when the matters therein named are proven, then a prima facie case is made and nothing more is required. When it was definitely established by the people's evidence that the defendant was absent from the county when the deposit was received by Mabel Olsen, an employee of the bank, and that the defendant did not personally receive the deposit, then it at once became absolutely essential, in order to sustain a conviction, under the statute, to show that the defendant assented to its

reception. The statute provides that evidence of the bank's failure within thirty days from the reception of the deposit shall be received as "prima facie evidence" of knowledge of the person charged with so receiving and assenting to the deposit, of the bank's insolvency. The statute does not make an officer of an incorporated bank criminally liable simply because he is such officer, and does not make him criminally liable because a deposit was received by the bank, or because the statute says that under the circumstances he had knowledge of insolvency. He must receive the deposit or assent to its reception. The receipt of the deposit in this case was a reception by the bank. To assert that its reception by Mabel Olsen, under the circumstances related, was the criminal act of the defendant is so repugnant to a fair conscience that it nowhere should have support in the law. If such was recognized, as it is by the majority opinion in this case, the evil that can follow is at once apparent. The people made no attempt to show that the defendant ever said or did anything from which any inference could be drawn that he in any respect assented to the reception of the deposit as charged, and the people's evidence is wholly barren of any showing that he, alone, as a director, or cashier, had any authority to close the bank or to revoke the authority of Mabel Olsen to receive deposits. The court, by instruction No. 6, in a most affirmative way, instructed the jury that the defendant was guilty, should they find that he was merely negligent as to keeping himself informed as to the financial condition of the bank, and when the jury found, from the evidence, that the bank was insolvent and that a deposit was received while it was insolvent, then it was not necessary for the people to prove a specific intent to injure, but it was only necessary to prove "criminal negligence." The jury was further instructed that the defendant was bound to exercise that reasonable degree of care and diligence that an ordinarily prudent person would do in like circumstances to

keep himself advised concerning the financial condition of the bank, and that the knowledge he could have thus obtained, he is "presumed to possess," and if he failed to exercise this degree of care and diligence, he would be guilty of criminal negligence, and should be found guilty. Mere negligence on the part of a bank official in failing to exercise reasonable diligence in such matters does not amount to criminal negligence unless it is also established that the defendant had a criminal intent and a guilty knowledge, and proceeded with a reckless disregard of the rights of others which the statute was designed to protect. The "criminal negligence" referred to in instruction No. 6, and as therein applied to the defendant, presumes both his knowledge of the insolvency of the bank and his assent to the reception of the deposit; it makes no allowance for defendant in case he had received misleading information while exercising reasonable diligence concerning the solvency of the institution. All of these important and vital questions are of fact for the jury's determination. With such an affirmative direction in the instructions, it clearly makes ordinary negligence, for which a civil liability would attach, "criminal negligence" in this case.

It appears that this defendant was convicted for the acts of a third person over which it was not shown he had any control. He was convicted upon a so-called prima facie case, made up to the exclusion of the "assent" which constituted the gravamen of the offense charged, and without the jury believing, as instructed, that the "receipt or assent to the reception of" was an element of the crime, and it was told that defendant's failure to revoke the authority of Mabel Olsen, whether he had such authority or not, would amount to an assent of the reception of the deposit. It is therefore apparent that the conviction of the defendant in this case rested upon two propositions: That the bank failed within thirty days after the deposit was made therein; and whether defendant had exercised reasonable diligence

to keep informed, instead of its resting upon the only question upon which he could have been convicted, namely, that *he had assented to the reception of a deposit in an insolvent bank with guilty knowledge of its insolvency.*

For these particular reasons, I think the judgment should be reversed.