No. 15,842.

Wright v. The People.
(181 P. [2d] 447)

Decided May 12, 1947.

Mr. ALBERT T. FRANTZ, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

IN January, 1946, the defendant was employed as a trash hauler, and while so engaged, had occasion to gather and remove some rubbish and old paper from the premises of Speer Furniture Company, 3600 West 32nd avenue, Denver, the property of the company having recently changed hands. The new owners had discarded many old books and papers, including a book of printed bank checks on the United States National Bank of Denver, used by the former owners. The new owners carried their current account in the Central Savings Bank, and accordingly, secured new printed checks of that bank. Defendant retrieved a book of the discarded United States National Bank checks from the trash and took them to his room. Thereafter he filled out some of them, naming fictitious persons as payees, signed them with a fictitious name, and passed them as genuine checks of the Speer Furniture Company to various persons for cash and in payment for merchandise, endorsing same with the name of the fictitious payee. One of such checks in the sum of $40.50 was presented to, and cashed by, the U. S. Drug and Sales Co., and it is upon this check that the information herein is based.

The information contains nine counts. The first two of which are for forgery, and the third count for confidence game. The jury returned verdicts of guilty on the first three counts. All the other counts relate to former convictions of the defendant for forgery, larceny, and receiving stolen goods in other states, except count seven which was in Colorado. With respect to the said former convictions the defendant admitted "his identity," and proper proceedings were had to establish such "former convictions and judgments" as provided by chapter 114, Session Laws, 1945, relating to punishment for habitual criminals. The defendant was thereupon sentenced as

an habitual criminal to life imprisonment in the penitentiary in accordance with the statute.

It is first contended, for reasons presently to be stated, that counts one and two of the information are fatally defective. Count one charged that defendant, "feloniously did falsely make, alter, counterfeit, and forge a certain instrument," and count two, that he "did unlawfully and feloniously utter, publish and pass the same * * * as true and genuine." Upon this contention, counsel for defendant says in his brief:

"Count one of the information charged the defendant with falsely making, altering, counterfeiting and forging a check. In speaking of the same instrument, the defendant is charged with having falsely made it and with having altered it."

"A falsely made instrument refers to the instrument itself as being false. An altered instrument presupposes the existence of a genuine instrument.

"Thus, we have contained within the same count two repugnant allegations which negative each other and render the count meaningless.

"The same thing may be said of the second count which charges the defendant with having uttered, published and passed this false, forged, altered, and counterfeited check. A person cannot in relation to the same instrument pass a falsely made and altered instrument. Either it is a false instrument, or it is a genuine instrument which is altered.

"Hence, the second count is vulnerable to the same attack as was asserted against the first count."

Both counts one and two are predicated upon section 130, chapter 48, '35 C.S.A., which reads in part: "Every person who shall falsely make, alter, forge or counterfeit any * * * check or draft * * * with intent to damage or defraud any person or persons, * * * or shall utter, publish, pass, or attempt to pass as true and genuine, or cause to be uttered, published, passed, or attempted to be passed, as true and genuine, any of the above named

false, altered, forged, or counterfeited matters as above specified and described, knowing the same to be false, altered, forged or counterfeited, with intent to prejudice, damage or defraud any person or persons * * * shall be deemed guilty of forgery. * * * "

We have said that the above statute "embraces two definitions of forgery; first, the making of a false check * * *; and second, attempting to pass it as true and genuine * * *." *People v. McDonald,* 53 Colo. 265, 267, 125 Pac. 114.

The crime denounced by the above statute is forgery. It provides that such crime may be committed in any one of several different ways, that is, falsely "making" or "altering" or "forging" or "counterfeiting" or "uttering," etc. No matter in which way the act is violated, the crime committed is forgery. Consequently, there can be no prejudice resulting to the defendant by reciting in the information several ways the crime may be committed. If defendant violated the statute in only one way, the fact that other ways were alleged is mere surplusage and not prejudicial to his rights in any manner.

We have consistently held that an information or indictment which describes an offense, either in the language of the statute or so plainly that the nature of the crime may be readily and easily understood by the jury, is sufficient. *Albert v. People,* 90 Colo. 219, 7 P. (2d) 822; *Helser v. People,* 100 Colo. 371, 68 P. (2d) 543.

The information in the instant case describes the offense in the language of the statute, and there could be no reason for misunderstanding the meaning thereof, by either the defendant or the jury. The substantial rights of the defendant have not been prejudiced or affected in any manner, and under such circumstances we cannot interfere. '35 C.S.A., c. 48, §490; *Manship v. People,* 99 Colo. 1, 58 P. (2d) 1215; *Woolsey v. People,* 98 Colo. 62, 53 P. (2d) 596; *Grandbouche v. People,* 104 Colo. 175, 89 P. (2d) 577; *Cole v. People,* 92 Colo. 145, 18 P. (2d) 470.

In the case last above cited the contention was made that the information was "too uncertain, inconsistent, and repugnant to inform the defendants of the nature and cause of the accusation or to support a judgment," and that it charges two separate crimes, that of receiving deposits in an insolvent bank, and larceny. In disposing of this contention we said at page 150: "The information does not charge two crimes. It correctly charges conduct that the act of 1913 declares to be a crime, and then mistakenly alleges in substance, that by so doing the defendants committed larceny. The legal conclusion that such conduct constitutes larceny is erroneous, of course, but the allegation did not—indeed, it could not—mislead the defendants. The allegation has no proper place in the information, but its insertion did not tend to prejudice the substantial rights of the defendants on the merits, and therefore is no ground for the reversal of the judgment. C.L. §7103. The trial court properly rejected it as surplusage."

We accordingly hold that counts one and two of the information, and the conviction of defendant thereon, are in all respects valid.

■ The next contention of counsel for defendant relates to the third count of the information. He concedes that said count charges the commission of the offense of confidence game denounced by section 222 of chapter 48, of the statute in manner and form required by section 223 of the same chapter, but argues that the last above mentioned section is too indefinite because of the use of the abbreviation "etc." in the following excerpt from that section: "It shall be deemed and held a sufficient description of the offense to charge that the accused did, on, *etc.* unlawfully and feloniously obtain * * *."

■ The validity of this statute was considered in the following cases wherein we expressly held that the statute is not obnoxious to the constitutional provision to which reference is made. *Lace v. People,* 43 Colo. 199, 95 Pac. 302; *People v. Martin,* 78 Colo. 200, 240 Pac. 695.

"The meaning of the phrase 'et cetera' or its abbreviation 'etc.' depends largely on the context of the instrument, the description and enumeration of matters preceding the term, and the subject matter to which it is applied. When used in a statute, the words should be given their usual and natural signification. * * * " 50 Am. Jur., p. 269, §285. When so construed, there can be no doubt that the abbreviation "etc.", as used in the statute under consideration, means the time when the alleged offense was committed, and takes the place of "on the _____day of_____, 19_____." Counsel for defendant in his brief says that the word is meaningless, and that in the use thereof it is necessary to "infer the intent of the legislature." If that is true, then its use was harmless and without effect, and should be treated as mere surplusage. 1 Am. Jur., p. 119, §11.

██ ██ The present contention, like the former one, is highly technical and relates to matters of form and not to the substantial rights of the defendant. Count three of the information, in plain and unambiguous language charged defendant with the crime of confidence game and alleged that he "did unlawfully and feloniously obtain from Edward Lisenring * * * thirty-six dollars ($36.00) in money of value of thirty-six dollars ($36.00) and merchandise of the total value of four dollars and fifty cents ($4.50) of the moneys and personal property of Edward Lisenring * * * by means and by use of the confidence game; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the state of Colorado."

This charge in the information is all that is required under the statute and the decisions of this court. There is no justification for the assertion that it is in any manner indefinite or uncertain, or that the statute should receive such an unnatural and strained construction, as is placed thereon by counsel.

The above quoted section and section 490 of the same chapter, and similar enactments, were no doubt intended

by the legislature to prevent the escape of guilty persons upon purely technical grounds not affecting their substantial rights and to render successful a prosecution which might otherwise fail because of harmless error.

Section 223, supra, was under similar attack in *Bridge v. People,* 63 Colo. 319, 165 Pac. 778, where it was contended that the language of the statute must be strictly followed, and that the information did not state any offense under the law by reason of the fact that the word "unlawfully" was inadvertently omitted preceding the word "feloniously" in the information. At page 320 of the opinion, we say: "Though the statute in declaring that a certain form of words shall be sufficient to charge the offense, uses the word 'unlawfully' as well as 'feloniously,' we are unwilling to hold that the former word must appear in the indictment or information as the latter does. We hold that that which is done feloniously is necessarily unlawfully done. * * * Moreover §1785 [224] commands that the act shall be liberally construed and we think this necessarily implies that the words of §1784, supra, need not be strictly followed. It is sufficient to allege facts presenting a clear case of obtaining, or attempting to obtain, from another, money or property 'by means and use of the confidence game.' * * * Besides, it is charged in the information that the acts were 'contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the state of Colorado.' Here is an express charge that the acts were contrary to the statute —the law defining the crime—and is necessarily equivalent to the charge that they were 'unlawfully' done. * * * It seems clear that within the legislative intent the information in question charges the defendant with the commission of the offense for which he was convicted and sentenced."

With respect to count three of the information, it also is contended that section 223, supra, refers to indictments and not to informations, and therefore, the latter

is wholly ineffective to charge the defendant with such offense. We have held, contrary to such contention, that the prosecution of such offenses by indictment is not exclusive. *Grandbouche v. People, supra; Clarke v. People,* 105 Colo. 335, 97 P. (2d) 440. The contention that count three of the information is invalid is without merit.

■ The next contention is that the convictions in foreign jurisdictions set forth in counts four, five, six, eight, and nine, pursuant to section 555 (1), chapter 48, '35 C.S.A. (1945 Supp.) relating to the "punishment for habitual criminals," cannot be here considered because each of those counts concludes with the words "contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the state of Colorado," as required by the Constitution, article VI, section 30, whereas the crimes of which the defendant was convicted in foreign states were not as alleged "against such peace and dignity." Counsel says in this connection, "so long as the constitutional provision remains as a part of the fundamental law of the state, it will be impossible to charge a defendant with a violation of a law and the conviction thereof, of a foreign state."

Cases are cited to the effect that the above clause of the Constitution cannot be dispensed with, and that each information must conclude with the words above quoted. Counsel also contends that section 16, article II, of the Constitution is also violated because, with respect to foreign convictions, defendant is deprived of his constitutional right to be tried "by an impartial jury of the county or district in which the offense is alleged to have been committed." Cases are cited in support of such contention and to the effect that the accused has such constitutional right.

A sufficient answer, however, to such argument, is that the habitual criminal act did not create a new crime. It merely provided that the court, in sentencing a de-

fendant after conviction, must consider former convictions in imposing sentence. No attempt is to be made under this statute to resentence the defendant on the former convictions, whether the same were rendered in Colorado or in other states, but they are to be considered in the nature of aggravation of the offense upon which he was about to be sentenced. It is merely a circumstance which any court would no doubt consider, independent of statute. The statement in the information, counts four, five, six, eight, and nine, that the conviction in other states is contrary to the form of the Colorado statute, is harmless surplusage. The intent and purpose of such statutes, which defendant here misconceives, is well stated by the United States Circuit Court of Appeals in *Goodman v. Kunkle,* 72 F. (2d) 334, 336, as follows: "[2] Habitual criminality is a state, not a crime. The so-called 'count 3' is not, in fact, a separate 'count' in the sense in which that term is customarily employed. Habitual criminal statutes, such as that of Indiana, do not create or define a new or independent crime, but they prescribe circumstances wherein one found guilty of a specific crime may be more severely penalized because of his previous criminalities as they are alleged and found. This was definitely decided in Barr v. State (Ind. Sup.) 187 N.E. 259. In McDonald v. Massachusetts, 180 U.S. 311, 21 S. Ct. 389, 390, 45 L. Ed. 542, the court, in considering a statute imposing greater punishment because of prior convictions for crimes, said: 'The allegation of previous convictions is not a distinct charge of crimes, but is necessary to bring the case within the statute, and goes to the punishment only.' "

The United States Supreme Court considered a similar statute in a case involving a defendant who was prosecuted and convicted in Massachusetts and was sentenced as an habitual criminal on previous convictions in Massachusetts and New Hampshire. In upholding the statute the court said:

"The fundamental mistake of the plaintiff in error is his assumption that the judgment below imposes an additional punishment on crimes for which he had already been convicted and punished in Massachusetts and in New Hampshire.

"But it does no such thing. The statute under which it was rendered is aimed at habitual criminals; and simply imposes a heavy penalty upon conviction of a felony committed in Massachusetts since its passage, by one who had been twice convicted and imprisoned for crime for not less than three years, in this, or in another state, or once in each. The punishment is for the new crime only, but is the heavier if he is an habitual criminal. Statutes imposing aggravated penalties on one who commits a crime after having already been twice subjected to discipline by imprisonment have long been in force in Massachusetts; and effect was given to previous imprisonment, either in Massachusetts or elsewhere in the United States, by the statute of 1927, c. 118, §19, and by the Revised Statutes of 1836, c. 133, §13. It is within the discretion of the legislature of the state to treat former imprisonment in another state, as having the like effect as imprisonment in Massachusetts, to show that the man is an habitual criminal. The allegation of previous convictions is not a distinct charge of crimes, but is necessary to bring the case within the statute, and goes to the punishment only. The statute, imposing a punishment on none but future crimes, is not ex post facto. It affects alike all persons similarly situated, and therefore does not deprive anyone of the equal protection of the laws." *McDonald v. Massachusetts,* 180 U.S. 311, 21 Sup. Ct. 389, 390, 45 L. Ed. 542.

The supreme court of Washington reaches the same conclusion involving former convictions in Missouri and Washington. *State v. Edelstein,* 146 Wash. 221, 262 Pac. 622. See, also, *People v. Frank,* 134 Cal. App. 61, P. (2d) 905; *Cross v. State,* 96 Fla. 768, 119 So. 380.

The following excerpt from the above Florida decision is relevant here. " * * * 'Aside from the offender and his victim, there is always another party concerned in every crime committed—The State—and it does no violence to any constitutional guaranty for the State to rid itself of depravity when its efforts to reform have failed.' More and more are we coming to the notion that punishment for habitual offenders should be made to fit the criminal as well as the crime. In prescribing punishment for such offenders it is both competent and just to take into consideration not only the nature of the crime for which the punishment is to be imposed, but also the incorrigibility and depravity of the accused as demonstrated by previous convictions. Even greater importance was ascribed to the latter factor by Mr. Justice Demmer, in State v. Dowden [137 Iowa, 573], 115 No. W.R., 211, where the following pertinent observation was made upon a statute similar to ours: 'Surely when one by his conduct has indicated that he is a recidivist, there is no reason for saying that society may not protect itself from his future ravages. It is neither cruel nor unusual to say that an habitual criminal shall receive a punishment based upon his established proclivities to commit crime.' "

Other points have been mentioned in the briefs of plaintiff in error, but in the light of our conclusion as above announced, we deem it unnecessary to consider them.

The judgment is affirmed.